**THE GREYSTONE HOTEL CO., Plaintiff,**

v.

**THE CITY OF NEW YORK, Edward Hochman, as Chairman of the Rent Guidelines Board, Earl Andrews, Paul Atanasio, Elissa Fitzig, Augusin Rivera, Joseph L. Forstadt, Harold A. Lubell, Leslie Holmes, and Kenneth Rosenfield, all as Members of the Rent Guidelines Board, Joseph Holland, as Commissioner of the New York State Division of Housing and Community Renewal, and the New York State Division of Housing and Community Renewal, Defendants.**

**No. 96 CIV. 7943(LLS).**

United States District Court, S.D. New York.

July 20, 1998.

Robert M. Olshever, P.C., Newman, Tannenbaum, Helpern, Syracuse & Hirschtritt LLP, New York City (Robert M. Olshever, Vincent J. Syracuse, Yolanda Kanes, David A. Pellegrino, of counsel), for Plaintiff.

Corporation Counsel of the City of New York, New York City (Gabriel Taussig, Sherrill Kurland, Dana Biberman, of counsel), for City Defendants.

West Side Sro Law Project, New York City (Elizabeth Kane, of counsel), Wayne G. Hawley, MFY Legal Services, Inc., New York City (Olive Karen Stamm, of counsel), for Tenants Amici Curiae.

## OPINION AND ORDER

STANTON, District Judge.

The Greystone Hotel ("Greystone") claims that it is meant to be a transient hotel, housing guests at its own rate of $90 per night, but the law forces it to give leases to permanent tenants at a much lower rate set by the state.[1]

Greystone is a Class B hotel[2] located in Manhattan and subject to the Rent Stabilization Law ("RSL")[3] and Rent Stabilization Code ("RSC")[4], under which rooms in Greystone that are occupied by permanent tenants have a maximum legal rent. A permanent tenant is a person who has continually resided in the hotel for at least six months or has a lease of six months or more. RSC § 2520.6(j). Any occupant of the hotel may request a lease, and the hotel must grant a lease, with a term of at least six months for a rent not exceeding the legal regulated rent. RSC § 2522.5(a)(2) ("Mandatory Lease Provision").

To maintain classification as a hotel, Greystone must provide weekly maid and linen service, furniture and furnishings, and a continually staffed lobby. RSC § 2521.3 ("Mandatory Service Provision").

The Rent Guidelines Board (the "Board") determines annual rent increases pursuant to RSL § 26–510, and promulgates the increases through hotel orders. While the Board has allowed rent increases to Class B hotels in 21 of the last 27 years, it has not allowed one in any of the last three years.[5] *See*

Affidavit of Doug Hillstrom, sworn to July 9, 1997, Ex. M; Reply Affidavit of Ira Drukier, sworn to September 8, 1997, at ¶ 17.

Greystone states that all of its rooms are now occupied by permanent tenants, which does not allow it to operate as a transient hotel, and that the large difference between what it could charge transient customers and what it must charge permanent tenants deprives it of economically viable use of its property. It claims that the mandatory lease and service provisions and the hotel orders constitute uncompensated physical and regulatory taking, and deprive it of property in violation of its rights to due process and equal protection of the laws. It further claims that the hotel orders are beyond the authority of the Board because the Board is creating social policy without legislative authorization by considering what tenants can afford to pay instead of only market data and the hotels' costs.

Both sides move for summary judgment.

## DISCUSSION

### A. Physical Taking

 Physical occupation of property by the government is always a taking, *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982), whether the government is itself the occupier or enacts a law that allows third-party occupation. In a physical taking, the landowner "has no power to exclude the occupier from possession and use of the space." *Loretto*, 458 U.S. at 435, 102 S.Ct. at 3176. This is particularly egregious because "The power to exclude has traditionally been considered one of the most treasured strands in an owner's bundle of property rights." *Id.*

---

1. The court need not decide the accuracy of the amicus's claim that the Greystone consistently charges its residents more than the legal rate.

2. A Class B hotel is a Class B dwelling that provides the hotel services listed in RSC § 2521.3. RSC § 2520.6. "A Class B multiple dwelling is a multiple dwelling which is occupied, as a rule transiently, as the more or less temporary abode of individuals who are lodged with or without meals." N.Y. Mult. Dwell. Law § 4(9).

3. City Admin. Code §§ 26–501 *et seq.* (1987).

4. N.Y. Comp.Codes R. & Regs. tit. 9, §§ 2520 *et seq.* (1987).

5. The Board has recently issued its proposed order for 1998, again proposing no increase for Class B hotels.

In *Seawall Assocs. v. City of New York*, 74 N.Y.2d 92, 105, 544 N.Y.S.2d 542, 548, 542 N.E.2d 1059 (N.Y.1989), the New York Court of Appeals stated that rent-control laws and other valid housing regulations "merely involved restrictions imposed on existing tenancies where the landlords had voluntarily put their properties to use for residential housing." While those laws do not constitute a physical taking, laws which "force the owners, in the first instance, to subject their properties to a use which they neither planned nor desired" by requiring owners to rent their property "to persons with whom they have no existing landlord-tenant relationship" do constitute a physical taking. *Seawall*, 74 N.Y.2d at 105–06, 544 N.Y.S.2d at 548, 542 N.E.2d 1059.

■ Plaintiff argues that it was intended to be a purely transient hotel, and the challenged provisions force it into a landlord-tenant relationship with its occupants, a situation it neither planned nor desires.

However, the forced conversion from renting to transients, on the one hand, and leasing to permanent tenants, on the other, is not a physical taking. Whether a room holds a different resident each day or a permanent tenant with a lease, the room is still occupied. Furthermore, since § 2522.5 requires that one be an occupant of a hotel before the hotel is required to give him a lease, Greystone is not required to enter into a landlord-tenant relationship with a stranger: rather, it is required to expand its relationship with someone to whom it has already rented a room. That is a regulatory effect, not a physical taking.

"The government effects a physical taking only where it *requires* the landowner to submit to the physical occupation of his land." *Yee v. City of Escondido, California*, 503 U.S. 519, 527, 112 S.Ct. 1522, 1528, 118 L.Ed.2d 153 (1992) (emphasis in original). In *Yee*, a law severely limited the reasons for which park owners could evict their mobile home tenants, prohibited the owners from refusing to lease to their tenants' transferees if they could pay, and limited rents charged on mobile home plots, with the result that the tenant (or successor) became effectively a permanent occupant of the park and the increased value of his mobile home (because of the below-market rent) was in effect taken from the park owner's property. Nevertheless, the Court held that since the park owners had voluntarily rented their land to mobile home owners, even the inability to choose tenants' successors or exclude certain occupants did not amount to a physical taking: "[I]t does not convert regulation into the unwanted physical occupation of land. Because they voluntarily open their property to occupation by others, petitioners cannot assert a *per se* right to compensation based on their inability to exclude particular individuals." *Yee*, 503 U.S. at 531, 112 S.Ct. at 1530 (citing *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 261, 85 S.Ct. 348, 359, 13 L.Ed.2d 258 (1964)).

In *Seawall*, where the owners were forced to rent units which they did not wish to offer, but to hold vacant, the New York Court of Appeals looked to the same factor and found a physical taking: "It is the forced occupation by strangers under the rent-up provisions of the law, not the identities of the new tenants or the terms of the leases, which deprives the owners of their possessory interests and results in physical takings." *Seawall*, 74 N.Y.2d at 106, 544 N.Y.S.2d at 548, 542 N.E.2d 1059; *see also Rent Stabilization Ass'n v. Higgins*, 83 N.Y.2d 156, 172, 608 N.Y.S.2d 930, 937, 630 N.E.2d 626 (N.Y. 1993) (not a physical taking to require an owner who has voluntarily acquiesced in the use of its property for rental housing to rent to "family members" (broadly defined) succeeding the tenant).

The challenged provisions regulate the terms on which Greystone can rent its rooms, the amounts it can charge, and the services it must provide. That is not a physical occupation of Greystone.

**B. Regulatory Taking**

Greystone's grievance is that it cannot use its property as it wishes—to rent to transients only. It claims that because

Most of the Greystone's hotel is occupied by tenants who, because of the Mandatory Lease Provisions, are entitled to permanent occupancy at a nominal cost ... the

Greystone barely makes a profit and is forced, by the Mandatory Service Provisions, to provide hotel services which further diminish any profit. The effect of the Challenged Laws has been to deprive the Greystone of its means of earning a fair profit by renting its rooms to transient occupants or guests. They are therefore constitutionally void.

Pl.'s Br. at 28.

■ If the regulation does not substantially advance a legitimate state interest, or if it denies an owner economically viable use for his property, there is a regulatory taking. *Nollan v. California Coastal Comm'n,* 483 U.S. 825, 834, 107 S.Ct. 3141, 3147, 97 L.Ed.2d 677 (1987).

### 1. Substantial advancement of legitimate state interest

■ The legitimate state interest in the RSL and RSC is coping with an acute shortage of available housing, and preventing unjust and oppressive rents and profiteering. *See* RSL § 26–501; RSC § 2520.3; Defs.' Reply Br. at 19; *Manocherian v. Lenox Hill Hosp.,* 84 N.Y.2d 385, 395–96, 618 N.Y.S.2d 857, 862, 643 N.E.2d 479 (1994) ("The central, underlying purpose of the RSL is to ameliorate the dislocations and risk of widespread lack of suitable dwellings.").

The challenged provisions require a hotel to issue a lease to an occupant at no more than the governmentally-established rent. This increases the availability of affordable housing to meet a need which is so great that, as Greystone itself states, when one person terminates a lease, another takes his place. *See* Pl's. Br. at 13. The nexus between the challenged provisions and their advancement of the legitimate state interest of increasing affordable housing is clear beyond argument.

### 2. Economically viable use

■ Plaintiff claims that the RSL and the RSC, when combined with hotel orders which have not allowed it to raise its rent from year to year, deprive it of economically viable use of its property. The determination of this issue depends on a comparison between Greystone's costs and the rent it is allowed to charge.

Greystone has not provided that information, relying instead on the conclusory statement that it is "barely making a profit." Its failure to offer facts showing that it is denied economically viable use of its property (which it was obliged to do once presented with defendants' motion for summary judgment, *see* Fed.R.Civ.P. 56(e) ("an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial"); *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 2137, 119 L.Ed.2d 351 (1992)) forfeits its claim.

■ Indeed, its concession that it is profitable undercuts Greystone's claim because although the regulation may not validly preclude Greystone "from realizing any profit whatsoever," Greystone is not guaranteed a "reasonable return" on its investment. *Park Ave. Tower Assocs. v. City of New York,* 746 F.2d 135, 138–40 (2d Cir.1984), *cert. denied,* 40 Eastco v. City of New York, 470 U.S. 1087, 105 S.Ct. 1854, 85 L.Ed.2d 151 (1985). Furthermore, lack of profit does not establish a regulatory taking if the "property use allowed by the regulation is sufficiently desirable to permit property owners to 'sell the property to someone for that use.'" *Park Ave.,* 746 F.2d at 139, quoting *Sadowsky v. New York,* 732 F.2d 312, 318 (2d Cir.1984). Its present owners bought the Greystone while it was under regulation.

■ It is clear that plaintiff has no constitutional right to what it could have received in an unregulated market. *See Federal Home Loan Mortgage Corp. v. New York State Div. of Hous. and Community Renewal,* 83 F.3d 45, 48 (2d Cir.1996) (no regulatory taking because "Although FHLMC will not profit as much as it would under a market-based system, it may still rent the apartments and collect the regulated rents").

Furthermore, Greystone's claim is premature because it has not attempted to obtain a hardship increase authorized by RSL § 26–511(c)(6) and (6–a) and RSC § 2522.4(b) and

(c). These sections allow a hotel owner to apply for rent increases above those authorized by the Board because of a hotel's economic condition.

Although plaintiff states that it is extremely difficult to get a hardship increase, and that it cannot be known whether any increase it got would make its use of the property economically viable, it has not even tried. "Because petitioners do not claim to have run that gauntlet, however, this case provides no occasion to consider how the procedure has been applied to petitioners' property, and we accordingly confine ourselves to the face of the statute." *Yee,* 503 U.S. at 528, 112 S.Ct. at 1529. *See also Pennell v. City of San Jose,* 485 U.S. 1, 10, 108 S.Ct. 849, 857, 99 L.Ed.2d 1 (1988) (no consideration of takings claim absent a sufficiently concrete factual setting).

* * * * * *

Accordingly, the argument that Greystone has suffered a regulatory taking fails because the regulations substantially advance a legitimate state interest, and Greystone offers no evidence that they deny Greystone economically viable use (albeit not Greystone's preferred use) of its property.

## C. Due Process and Equal Protection Violations

Since there is no physical or regulatory taking of its property, the right Greystone claims is violated can only be the right to run its business as it sees fit and charge what it wants. Because that right is not fundamental[6] and Greystone is not in a protected class, the standard for both claims is the same: whether the law is rationally related to a legitimate state interest. *See Richardson v. Belcher,* 404 U.S. 78, 84, 92 S.Ct. 254, 258, 30 L.Ed.2d 231 (1971) (no due process violation "if the [legislative] goals sought are

legitimate, and the classification adopted is rationally related to the achievement of those goals"); *Pennell,* 485 U.S. at 13–14, 108 S.Ct. at 858–59 ("We will not overturn a statute that does not burden a suspect class or a fundamental interest unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational.").

## D. The Authority of the Board to Promulgate the Hotel Orders

■ Plaintiff claims that the Board went beyond its authority in denying hotels any rent increase in the past three years. It states that the Board was creating social policy, something not within its power, by taking tenants' ability to pay into account.

However, the legislature gave the Board this power in RSL § 26–510(b) when it allowed the Board to consider, "among other things" 1) "the economic condition of the residential real estate industry," 2) "relevant data from the current and projected cost of living indices," and 3) "such other data as may be made available to it." The law gives the Board great latitude in deciding what factors to examine and what weight to place on each factor.

## CONCLUSION

Plaintiff's motion for summary judgment is denied. Defendants' motion for summary judgment is granted. The Clerk will enter judgment for defendants dismissing the claims.

So ordered.

---

**6.** Fundamental rights are those "specific freedoms protected by the Bill of Rights" and those liberties which have been designated by the Supreme Court in a long line of cases. *See Washington v. Glucksberg,* 521 U.S. 702, ──, 117 S.Ct. 2258, 2267, 138 L.Ed.2d 772 (1997) (listing liberties the Court has found fundamental with case citations for each). Economic and social regulations, such as those in this case, are not subject to the same heightened scrutiny as fundamental rights. *See F.C.C. v. Beach Communications, Inc.,* 508 U.S. 307, 313, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211 (1993) ("In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines or infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."); *Immediato v. Rye Neck Sch. Dist.,* 73 F.3d 454, 461 (2d Cir.1996) ("Where the claimed right is not fundamental, the government regulation need only be reasonably related to a legitimate state objective.").