No. 2--04--0719    filed: 3/24/06

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE CITY OF OAKBROOK TERRACE, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 99--CH--50 |
| | ) | |
| SUBURBAN BANK AND TRUST | ) | |
| COMPANY, as Trustee under Trust | ) | |
| Agreement dated July 1, 1996, and Known as | ) | |
| Trust No.1122; PARAMOUNT MEDIA | ) | |
| GROUP, INC.; CAROLYN B. ROBINETTE, | ) | |
| as Successor Trustee of the Clayburn B. | ) | |
| Robinette Declaration of Trust dated | ) | |
| November 15, 1980; THE ESTATE OF | ) | |
| ROSE ALMA ROBINETTE; and | ) | |
| NATIONAL ADVERTISING COMPANY, | ) | |
| d/b/a Outdoor Systems Advertising, | ) | |
| | ) | |
| Defendants-Appellees | ) | |
| | ) | |
| | ) | Honorable |
| (Public Storage, Inc.; Mad Outdoor, Inc.; and | ) | Patrick J. Leston, |
| Eller Media Company, Defendants). | ) | Judge, Presiding. |

JUSTICE O'MALLEY delivered the opinion of the court:

Plaintiff, the City of Oakbrook Terrace (City), sought to enforce a zoning ordinance

regulating off-premises, freestanding, outdoor advertising signs against various defendants

that owned or leased either existing legal, nonconforming signs or the property on which

such signs were located. The parties filed cross-motions for summary judgment. Relying primarily on section 7--101 of the Eminent Domain Act (Act) (735 ILCS 5/7--101 (West 1998)), the trial court found that the City could not require alteration of defendants' signs without paying them just compensation. Accordingly, it granted defendants' motions for summary judgment and denied the City's motion. The City appeals. We affirm.

## I. BACKGROUND

On December 23, 1980, the City, a home rule unit of local government, enacted Ordinance No. 80--24 (1980 ordinance) prohibiting off-premises, freestanding, advertising signs and requiring that all nonconforming signs be removed or altered to conform to the ordinance by 1988.

On January 15, 1999, the City commenced an enforcement action against defendants, seeking injunctive relief and the assessment of fines after it gave notice to defendants or their predecessors to remove, alter, remodel, or convert their signs to conform to the City's ordinance. Defendants did not bring their signs into conformance, file for variances, or appeal the City's determination that the signs violated the 1980 ordinance.

On August 14, 2001, the City enacted Ordinance No. 01--15 (2001 ordinance), which repealed certain portions of the 1980 ordinance, including the portion that prohibited off-premises, outdoor, advertising signs. The new ordinance permitted such signs, but imposed size and height restrictions and included a two-year amortization period for nonconforming signs. Under the ordinance, off-premises, outdoor, advertising signs could not exceed 20 feet in height and could not have a face area larger than 200 square feet.

Defendant Paramount Media Group, Inc. (Paramount), leases a free-standing off-premises outdoor advertising sign located at 0S480 Route 83 in the City. The sign was

erected by a predecessor to Suburban Bank and Trust Co. (Suburban), as trustee under a trust agreement dated July 1, 1996, and known as Trust No. 1122, and also owned by a predecessor to Suburban prior to the enactment of the 1980 ordinance. In November 1999, Paramount leased the sign from Suburban for a 20-year term. Suburban sold its property and the sign on December 18, 2003, to defendant J.T. Land Group, Inc. (J.T. Land Group).[1] Paramount leases space on the sign to various advertisers. The Paramount sign exceeds the area and possibly the height restrictions for such signs, in violation of the 2001 ordinance.

Defendant Carolyn B. Robinette, as successor trustee of the Clayburn B. Robinette Declaration of Trust dated November 15, 1980 (Robinette Trust), owns certain properties located at 0S680 and 0S700 Route 83 in the City (the Trust Properties). The Robinette Trust or its predecessor erected an off-premises, freestanding sign on the 0S700 property before the adoption of the 1980 ordinance, and it currently owns the sign and leases space on it to various commercial advertisers. Defendant Viacom, Inc. (Viacom), or its predecessor, National Advertising Company (National),[2] erected the off-premises, freestanding sign on the 0S680 property sometime before the adoption of the 1980

---

[1]On January 6, 2003, the trial court dismissed Suburban as a party defendant and substituted in its place J.T. Land Group.

[2]Viacom, Inc. was substituted for named defendant National Advertising Company.

ordinance. Under a lease with the Robinette Trust or its predecessor, Viacom's sign occupies the property and is leased to various commercial advertisers. Both signs on the Trust Properties exceed the height and space limitations set forth in the 2001 ordinance.

Defendant the estate of Rose Alma Robinette (Robinette Estate) owns property located at 0S560 Route 83 in the City. Viacom or National erected an off-premises, freestanding sign on the property sometime prior to the adoption of the 1980 ordinance. Viacom leases the sign from the Robinette Estate or its predecessor and leases space on it to various commercial advertisers. The sign exceeds the height and space limitations set forth in the 2001 ordinance.

The City filed its third amended complaint on November 19, 2001, seeking injunctive relief against defendants, alleging they maintained off-premises signs in violation of its 2001 sign ordinance. Paramount filed a counterclaim against the City, arguing, among other things, that enforcement of the ordinance would result in an unlawful taking of Paramount's property without payment of just compensation. Following discovery, the parties filed cross-motions for summary judgment. On June 16, 2004, the trial court denied the City's motion and granted defendants' motions. The City timely appeals the grant of summary judgment in favor of defendants and the denial of its motion for summary judgment.

## II. STANDARD OF REVIEW

Summary judgment is proper when the pleadings, depositions, and affidavits on file demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Kleinschmidt, Inc. v. County of Cook, 287 Ill. App. 3d 312, 315-16 (1997). When the parties file cross-motions for summary judgment, the parties agree that no material factual issue exists and that only questions of law are

presented.  Subway Restaurants of Bloomington-Normal, Inc. v. Topinka, 322 Ill. App. 3d 376, 381 (2001).  Of course, the mere fact that the parties have presented cross-motions for summary judgment does not establish that no factual issues exist; rather, the trial court and the reviewing court may determine the existence of a factual issue sufficient to preclude the entry of summary judgment notwithstanding the fact that the parties do not believe one exists.  Kalis v. Colgate-Palmolive Co., 357 Ill. App. 3d 172, 174 (2005).  We review de novo the propriety of an order granting summary judgment.  Outboard Marine Corp. v. Liberty Mutual Insurance Co., 154 Ill. 2d 90, 102 (1992).  Similarly, the construction of a statute or ordinance involves a question of law, which we review de novo.  Village of Mundelein v. Franco, 317 Ill. App. 3d 512, 517 (2000).

### III. ANALYSIS

### A. Jurisdiction and Scope of Appellate Review

As a preliminary matter, we address whether we have jurisdiction to review this appeal and the scope of our review.  In this case, the City filed a complaint seeking to enforce its billboard ordinance against defendants.  Defendants, in turn, filed answers to the City's complaint and raised several affirmative defenses, including arguments based on free speech, due process, equal protection, a highway advertising statute, estoppel, and laches.  Subsequently, the City moved for summary judgment, addressing all the defenses raised by defendants.  In their motions for summary judgment, defendants raised only section 7--101 of the Act and a takings argument.  However, in their memoranda in opposition to the City's motion, defendants addressed some of their affirmative defenses.

Following a hearing on the parties' motions, the trial court denied the City's motion for summary judgment and granted defendants' motions.  The court noted that it had reviewed the

voluminous pleadings, and, in explaining its ruling, the court focused on section 7--101 of the Act. It concluded by stating that it was adopting the positions of Paramount and Viacom in their "briefs," without specifying if the court was relying solely on the materials defendants submitted in support of their motions for summary judgment or if it was also relying on defendants' memoranda in opposition to the City's motion. In its written order denying the City's motion and granting defendants' motions, the trial court stated "[f]or the reasons stated in open court, including [s]ection 7--101 of the [Act]."

In motions filed prior to oral arguments in this case, the parties presented arguments concerning our jurisdiction over all or part of this appeal. Viacom contends that this court does not have jurisdiction to consider the City's "interlocutory" appeal of its denied summary judgment motion because that motion addressed different issues from defendants' granted summary judgment motions. According to Viacom, because the trial court ruled only on the effect of section 7--101, this court lacks jurisdiction over the appeal from the denial of the City's summary judgment motion as to the other issues. The City contends that the trial court ruled on all of the issues raised in the parties' cross-motions for summary judgment and in the memoranda opposing the motions. Thus, because the order disposed of all the issues, it was a final, appealable judgment. Alternatively, the City moves to dismiss this appeal for lack for jurisdiction, arguing that the trial court's order was insufficient to establish jurisdiction for an interlocutory appeal because the order did not cite to Supreme Court Rule 304(a) or make the required express written finding that there was no just reason for delaying appeal. 155 Ill. 2d R. 304(a).

Ordinarily, the denial of a motion for summary judgment is not a final judgment and therefore is not appealable. Chavda v. Wolak, 188 Ill. 2d 394, 403 (1999). However, an exception exists where the parties file opposing motions for summary judgment on the same claim and the trial

court grants one motion and denies the other. Arangold Corp. v. Zehnder, 187 Ill. 2d 341, 358 (1999). The resulting order is final and appealable because it entirely disposes of the litigation. Arangold, 187 Ill. 2d at 358.

Here, the trial court's ruling is ambiguous as to its scope. Upon reviewing the transcript of the hearing on the parties' summary judgment motions, we are unable to ascertain whether the trial court ruled in defendants' favor on all of the issues raised in all of the summary-judgment-related pleadings or only with respect to the common issues addressed by both sides in their summary judgment motions. During the hearing on the parties' summary judgment motions, the court focused on section 7--101, but also noted that it was adopting the arguments in Paramount's and Viacom's "briefs." The court announced its decision following arguments by the City during which the City addressed, among others, some of defendants' affirmative defenses. In light of this ambiguity as to the scope of the order, we are reluctant to read the order expansively. Indeed, we note that defendants needed to prevail on only one of their affirmative defenses to dispose of this litigation. That said, however, the posture of the case under a narrow reading of the trial court's order is that defendants' position is sustained by virtue of the grant of summary judgment in their favor and against the City on defendants' motions and the denial of the City's motion for summary judgment. As a result, the affirmative defenses are effectively mooted and would potentially come into consideration on this appeal only if we find that the City should prevail on the issue of the application of section 7--101 of the Act. Because we ultimately conclude that the trial court properly ruled in defendants' favor on the issue of the application of section 7--101 of the Act, we need not further address the scope of its order. Accordingly, we shall interpret the court's ruling to encompass only the common issues raised in the parties' summary judgment motions, namely, the application of section 7--101 of the Act and a takings argument. We also note that, in answer to the

City's jurisdictional challenge, because the trial court's order on the cross-motions for summary judgment disposed of the litigation, it constituted a final judgment and this court has jurisdiction to consider this appeal.

In light of our narrow reading of the trial court's order, we decline to address two arguments raised by the City. First, the City and Viacom address whether the City's inspection fee constitutes an illegal tax. In the trial court, Viacom raised the fee issue as an affirmative defense. The City responded to this argument in its answer and subsequently addressed it in its motion for summary judgment, arguing that Viacom stated no facts to support its claim that the fee was excessive and had no relation to the cost of the inspections. Viacom, however, did not raise the fee issue in its summary judgment motion; instead, it raised it in its response in opposition to the City's summary judgment motion, arguing that the City did not show that there existed no material factual issue with respect to the fee argument. As we noted above, given the ambiguous scope of the trial court's order, we will read it as incorporating only the issues addressed by both sides in their motions for summary judgment, namely, section 7--101 of the Act and a takings argument. Therefore, because both sides did not address the fee issue in their summary judgment motions, we decline to address it here.

Second, the City requests that we address its argument that defendants' affirmative defenses be stricken. In its motion for summary judgment, the City argued that defendants' affirmative defenses should be stricken for failure to plead sufficient facts. See 735 ILCS 5/2--613(d) (West 1998). The City furthermore requests that we address the affirmative defenses. Because defendants did not raise these issues in their summary judgment motions, we decline the City's request to address them here. Moreover, as noted above, in light of our ruling on the applicability of section 7--101 of the Act, there is no need to reach the affirmative defenses.

Accordingly, we deny as moot the City's motion to preclude defendants from relying on their affirmative defenses as a basis to decide this appeal. We grant Viacom's motion, joined by the other defendants, to strike for lack of jurisdiction the City's appeal of the summary judgment denial as to all issues (excluding section 7--101 of the Act and the takings argument). Finally, we deny the City's motion to dismiss this appeal for lack of jurisdiction.

### B. Home Rule Powers

The City argues that, as a home rule municipality, it is not subject to the requirements of the Act. It contends that, under its home rule authority, it can regulate signs and eliminate nonconformities over time in the manner it determines to be in the best interests of the City and its residents. Addressing the City's home rule argument, the trial court found that the Act preempts the City's ordinance and that sign owners throughout the state should be compensated equally.

Section 7--101 of the Act provides, in relevant part: "[p]rivate property shall not be taken or damaged for public use without just compensation, and in all cases in which compensation is not made by *** [a] municipality in its respective corporate capacity, such compensation shall be ascertained by a jury." 735 ILCS 5/7--101 (West 1998). The 1993 amendment to the Act provided specific protection to billboard owners. Pub. Act 87--1205, eff. July 1, 1993 (amending 735 ILCS 5/7--101 (West 1992)). After the amendment, section 7--101 further provides: "[t]he right to just compensation as provided in this Article applies to the owner or owners of any lawfully erected off-premises outdoor advertising sign that is compelled to be altered or removed under this Article or any other statute, or under any ordinance or regulation of any municipality or other unit of local government, and also

applies to the owner or owners of the property on which that sign is erected." (Emphasis added.)  735 ILCS 5/7--101 (West 1998).

The City is a home rule municipality and derives its home rule powers from the Illinois Constitution of 1970.  Ill. Const. 1970, art. VII, §6.  The constitution permits municipalities to exercise any power and perform any function pertaining to their government and affairs, except as limited by that section.  Ill. Const. 1970, art. VII, §6(a).  Section 6(i) provides that home rule units may perform concurrently with the state any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the state's exercise to be exclusive.  Ill. Const. 1970, art. VII, §6(i).  The intent and purpose of the home rule provisions is to severely limit the judiciary's authority to preempt home rule powers through judicial interpretation of unexpressed legislative intent.  Scadron v. City of Des Plaines, 153 Ill. 2d 164, 186 (1992).  Home rule powers should be construed liberally.  Ill. Const. 1970, art. VII, §6(m).

We apply a three-part test to determine whether a municipality's actions are a valid exercise of its home rule authority.  County of Cook v. John Sexton Contractors Co., 75 Ill. 2d 494, 508 (1979).  First, we must decide whether the exercise of power by the municipality is a power " 'pertaining to its government and affairs.' "  County of Cook, 75 Ill. 2d at 508, quoting Ill. Const. 1970, art. VII, §6(a).  Second, we must determine whether the legislature has specifically limited the local exercise of the power at issue or whether the legislature has specifically declared the State's exercise to be exclusive, thereby totally preempting a home rule unit's exercise of its constitutional power.  Finally, if no specific

action has been taken, then we must determine the proper relationship between the local ordinance and the state law.  County of Cook, 75 Ill. 2d at 508.

## 1. Local Government and Affairs

The presence of a statewide, as opposed to a local, interest in an area has been found on the basis of constitutional provisions committing the area in question to a specific branch of government.  McLorn v. City of East St. Louis, 105 Ill. App. 3d 148, 153 (1982) (power over sovereign immunity); County of Cook, 75 Ill. 2d at 514-15 (environmental control); People ex rel. Lignoul v. City of Chicago, 67 Ill. 2d 480, 487 (1977) (regulation of banking industry); Ampersand, Inc. v. Finley, 61 Ill. 2d 537, 542 (1975) (unified court system); see also City of Quincy v. Daniels, 246 Ill. App. 3d 792, 796-97 (1993) (home rule municipality's trespass ordinance, which created a criminal offense for conduct the state's criminal statute deemed to be noncriminal, held void because language in state statute and constitutional convention comments reflected a statewide policy of having a uniform definition of crimes).  Home rule entities also have been found to overstep their powers when their ordinances have an extraterritorial effect.  See, e.g., People ex rel. Bernardi v. City of Highland Park, 121 Ill. 2d 1, 16 (1988) (home rule municipality could not abrogate state statute regulating prevailing wages for public works projects where the ordinance would have affected wages outside the city and intruded into a field traditionally regulated by the state).

It is not enough that the state has comprehensively regulated an area that would otherwise fall under home rule power.  Village of Bolingbrook v. Citizens Utilities Co. of Illinois, 158 Ill. 2d 133, 138 (1994).  Historic regulation by the state of an area is but one factor to consider in determining whether an area is of local dimension.  Bolingbrook, 158

Ill. 2d at 139. Whether a particular problem is of statewide rather than local dimension must be decided with regard for the nature and extent of the problem, the units of government that have the most vital interest in its solution, and the role traditionally played by local and statewide authorities in dealing with it. Kalodimos v. Village of Morton Grove, 103 Ill. 2d 483, 501 (1984).

Generally, the power to regulate outdoor advertising pertains to a municipality's government and affairs. Scadron, 153 Ill. 2d at 194. However, the administration of justice under the constitution is a matter of statewide concern and does not pertain to local government and affairs. Ampersand, 61 Ill. 2d at 542. When the interests affected extend well beyond those of home rule units, then the exercise of power does not pertain to local government and affairs. City of Carbondale v. Yehling, 96 Ill. 2d 495, 499 (1983).

In Yehling, the city of Carbondale, a home rule unit, enacted an eminent domain ordinance setting forth procedures to exercise eminent domain powers within its city limits for the purpose of redeveloping its business district. The supreme court initially determined that the city's purpose pertained to its local government and affairs. However, the court held that the city's exercise of eminent domain power under its ordinance impermissibly interfered with the state judiciary system and therefore it did not pertain to the local affairs of Carbondale. Yehling, 96 Ill. 2d at 501. By imposing duties upon county and judicial officials, defining specific remedies available in court proceedings, and prescribing the order of certain court proceedings, the ordinance was no longer local in character. Yehling, 96 Ill. 2d at 504.

Attempting to distinguish Yehling, the City argues that its use of amortization as just compensation has no impact on judicial procedures and that its ordinance places no undue

burden on the courts.  Paramount and Viacom contend that the City's ordinance precludes a specific remedy of just compensation available in court proceedings under section 7--101 of the Act and that the City is attempting to modify the procedural rules under the Code of Civil Procedure (Code) (735 ILCS 5/1--101 et seq. (West 1998)) that the judiciary would have to follow.  Thus, they argue that the City's ordinance directly conflicts with the Code and affects the court system and its procedures by completely denying citizens the procedural and property protections and the just compensation remedy mandated by the Act.

We disagree in part with Paramount and Viacom's argument that the City is attempting both to modify procedural rules of the Code and to preclude a specific remedy available under the Act.  We first look to the claim that the City's ordinance is seeking to modify the procedural rules of the Code.  We find that the City's ordinance does not impact the procedures the courts are to follow as set forth in the Code.  The Act's placement within the Code does not necessarily imply that any municipal ordinance to the contrary infringes into the judiciary's domain.  We find any infringement to be too tenuous.  We also note that the burden imposed on the judiciary in Yehling was more explicit, including prescribing the order of court proceedings and imposing duties on judicial officials.  Indeed, in other cases in which ordinances have been held to interfere with the procedural administration of the judiciary, the ordinances imposed, as in Yehling, explicit burdens on the court system.  See Village of Glenview v. Zwick, 356 Ill. App. 3d 630, 641 (2005) (home rule municipality's fee-shifting ordinance, which imposed on an opposing party the obligation to pay the municipality's reasonable attorney fees when the municipality was the successful party in litigation involving the enforcement or defense of a provision of its municipal code, did not

pertain to the city's government and affairs because it imposed a burden on the state's judicial system); City of Naperville v. Lerch, 198 Ill. App. 3d 578, 583-84 (1990) (in the absence of a statute passed by the General Assembly, trial court had no power to award plaintiff home rule municipality attorney fees under its ordinance permitting such award); Ampersand, 61 Ill. 2d at 542-43 (ordinance imposing payment of county library fee in addition to court filing fees held invalid because it related to the administration of justice, which is a statewide concern and does not relate to local government and affairs). The ordinance does not mandate any procedures dealing with the litigation of a violation of the ordinance. We conclude, therefore, that the City's actions here do not generally interfere with the Code of Civil Procedure.

This does not, however, answer the question of whether the City's ordinance precludes a remedy, namely, just compensation, available under the Act. The City argues that its amortization scheme is just compensation. That is to say, the amortization provision of the City's ordinance fulfills the Act's mandate that a property owner receive just compensation when it is deprived of its property by action of the state or municipal government. In support, the City cites to Village of Skokie v. Walton on Dempster, Inc., 119 Ill. App. 3d 299 (1983). According to the City, Village of Skokie endorses the use of an amortization period to compensate an owner while a municipality gradually eliminates a nonconforming use in its zoning scheme. The City overstates the rules laid down in Village of Skokie.

In the first instance, we note that Village of Skokie raises no home rule issue. Second, there is no issue regarding a taking being worked by a regulatory ordinance; thus there is no issue of whether an amortization period may stand as just compensation.

Because of these distinguishing features, the general rule that the City attempts to draw from Village of Skokie is inappropriate. The Village of Skokie court approved of the amortization at issue there (Village of Skokie, 119 Ill. App. 3d at 304-05); however, the issue being addressed related to the constitutionality of the ordinance, and not whether substituting amortization for just compensation overstepped a municipality's home rule authority. Village of Skokie, 119 Ill. App. 3d at 303-04.

Relatedly, we note that, even where a home rule municipality legislates within a subject matter where there exist state statutes, this exercise of home rule authority will be allowed where there is no infringement of the powers accorded to a specific governmental branch. For example, in City of Chicago v. Taylor, 332 Ill. App. 3d 583, 589 (2002), the court upheld an ordinance regulating firearms despite the existence of state statutes covering the same subject matter. Additionally, the court emphasized the fact that the delegates to the Illinois 1970 constitutional convention considered that firearm control "was a suitable field for local regulation pursuant to home rule authority." Taylor, 332 Ill. App. 3d at 588; see also Crawford v. City of Chicago, 304 Ill. App. 3d 818, 826-27 (1999) (domestic partnership ordinance valid exercise of home rule authority because it extended health benefits to city employees and did not impact marriage rights in general); Town of Normal v. Seven Kegs, 234 Ill. App. 3d 715, 719 (1992) (underage drinking ordinance was valid exercise of home rule authority where ordinance "does not conflict with or run contrary to State law"); City of Wheaton v. Sandberg, 215 Ill. App. 3d 220, 226 (1991) (local ordinance regarding the use of eminent domain to cure community blight upheld even though it did not incorporate all standards for determining blight as used in state statute; no legislative expression of need for uniformity across all communities in dealing with blighted areas).

But cf. LaSalle National Trust, N.A. v. Village of Mettawa, 249 Ill. App. 3d 550 (1993) (disconnection ordinance impermissibly infringes upon judiciary as it requires municipal approval of disconnection after court determines that requirements of disconnection statute have been met).  The key factor in these cases appears to be whether the ordinance "conflict[s] with or run[s] contrary to State law." Town of Normal, 234 Ill. App. 3d at 719. Where an ordinance contravenes a state statute, or otherwise intrudes upon the bailiwick of a governmental branch, the courts have not hesitated to find it an invalid exercise of home rule authority. E.g., Ampersand, 61 Ill. 2d at 542-43; Zwick, 356 Ill. App. 3d at 641; Lerch, 198 Ill. App. 3d at 583-84.

With these principles in mind, we find Department of Transportation v. Drury Displays, Inc., 327 Ill. App. 3d 881 (2002), to be more particularly apt.  There, the Department of Transportation condemned the defendant's sign and argued that the just compensation due to the defendant was only the "bonus value" (the difference between the market rent and the actual rent being paid) for the condemned sign. Drury Displays, 327 Ill. App. 3d at 887.  The court analyzed the plain language of the statute, particularly the portion of section 7--101 of the Act that was added by the 1993 amendment.  It held that "just compensation" is the fair market value of the property at its highest and best use on the date the property is condemned. Drury Displays, 327 Ill. App. 3d at 888.  According to the Drury Displays court, had the legislature intended that "just compensation" for a condemned sign mean "bonus value," it would have chosen to use the words "bonus value" in place of "just compensation." Drury Displays, 327 Ill. App. 3d at 888.

We find this analysis to be directly applicable to the case at hand.  "Amortization" has nothing to do with fair market value of the property at its highest and best use on the

date the property is deemed condemned. The City's claim, that amortization is just compensation, fails.

To the extent, then, that the City is arguing that its amortization schedule in its ordinance is the only remedy available to defendants, the ordinance burdens the state judiciary, because it prevents the state judiciary from awarding "just compensation" pursuant to the Act. Moreover, it affects the substance of the Act and not only the procedures. This infringement is significant enough to place it on par with the impermissible infringements identified in Yehling, 96 Ill. 2d at 501-04, Ampersand, 61 Ill. 2d at 542-43, Zwick, 356 Ill. App. 3d at 641, and Lerch, 198 Ill. App. 3d at 583-84. As a result, the City's attempt to replace "just compensation" with amortization as the only remedy available to a sign owner required to remove or alter its sign to comply with the City's ordinance infringes on the state judiciary and is an impermissible exercise of its home rule authority.

## 2. Remaining Issues Under Home Rule Analysis

As a result of our conclusion that the City's ordinance impermissibly infringes on a statewide issue, namely, the provision of just compensation to advertising sign owners, we need not continue our analysis of the ordinance under the framework set forth in County of Cook, 75 Ill. 2d at 508.

## C. Unlawful Taking

Our determination that the ordinance constitutes an improper exercise of home rule authority obviates a further analysis of the taking-without-just-compensation issue; if the ordinance is invalid, then the signs will be allowed to remain undisturbed. Consequently, there can be no taking. If the City institutes a new ordinance that does not attempt to

foreclose the remedies of the Act and moves to enforce it against defendants, then that may result in a taking under section 7--101 of the Act. That scenario, however, is not before us.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

BOWMAN, J., concurs.

JUSTICE CALLUM, dissenting:

Because I disagree with my colleagues that the City's ordinance infringes on the administration of the judiciary and thus does not pertain to its local government and affairs and because I find merit in the remainder of the City's home-rule-powers argument and its takings argument, I respectfully dissent.

## I. HOME RULE POWERS

### A. Local Government and Affairs

I disagree with the majority's conclusion that elimination of the remedy of just compensation infringes on the judiciary's domain. "[T]he mere fact that an ordinance defines notice procedures, the duties of the parties, and the remedies available to the parties does not interfere with the court system." Oak Park Trust & Savings Bank v. Village of Mount Prospect, 181 Ill. App. 3d 10, 23 (1989) (ordinance setting forth additional remedies that a court may employ does not impermissibly dictate court procedures).

Our supreme court has addressed on two occasions the validity of a home rule ordinance prescribing remedies available in court proceedings. In Yehling, the court took

issue with Carbondale's method of enforcing its eminent domain ordinance. The Carbondale ordinance's enforcement provisions ordered the trial court to fix a hearing date within five days of the filing of a takings motion. Further, it ordered the trial court to fix a hearing date after a petitioner deposited money with the county treasurer in the amount preliminarily found by the court to constitute just compensation. The Yehling court found that "in imposing duties upon county and judicial officials and prescribing the order of certain court proceedings, the ordinance is no longer local in character." Yehling, 96 Ill. 2d at 501. It continued:

"In the instant case, the ordinance purports to define the notice procedures of the courts, duties of parties in court, and specific remedies available in court proceedings. In doing so the city is attempting to set forth rules for the State judiciary to follow. This exercise of power is clearly a matter of State concern, and not a local function pertaining to a home rule unit's government and affairs." (Emphasis added.) Yehling, 96 Ill. 2d at 501.

In City of Evanston v. Create, Inc., 85 Ill. 2d 101 (1985), which was cited with approval by the Yehling court (Yehling, 96 Ill. 2d at 501), the supreme court held that the fact that the ordinance in question defined notice procedures, the duties of the parties, and the remedies available did not interfere with the court system, because courts are regularly called upon to enforce or interpret municipal ordinances. Create, 85 Ill. 2d at 116. In Create, Evanston, a home rule unit of government, enacted a landlord and tenant ordinance that imposed certain conditions upon rental lease agreements negotiated between landlords and tenants. It further set forth landlords' and tenants' rights, duties, and remedies. Addressing the ordinance's interplay with the unified state judiciary system, the

court distinguished Ampersand (61 Ill. 2d at 542-43), a case involving a Chicago ordinance that imposed a $2 filing fee in civil cases to support a county law library, finding that the Evanston ordinance placed no condition or barrier upon a citizen's access to the state's court system. Create, 85 Ill. 2d at 116. The court further found:

"The [o]rdinance does not prevent either landlord or tenant from seeking relief in the courts of the State. That fact that the provisions of the ordinance here in question defines [sic] notice procedures, duties of the parties, and remedies available does not interfere with our court system. Courts are regularly called upon to enforce or interpret municipal ordinances." Create, 85 Ill. 2d at 116.

I believe that Yehling and Create instruct that enactment of an ordinance prescribing additional remedies available in court proceedings will be held to be an invalid exercise of home rule powers if it prescribes the order of court procedures and imposes duties on court officials (as in Yehling) or if it restricts parties' access to the court system (as in Create). Here, the City's ordinance does not run afoul of either prohibition.

The majority asserts that, because the ordinance conflicts with state law (i.e., eliminates the remedy of just compensation), it is thus an invalid exercise of home rule power. This assertion is unfounded because, as I address below, the majority's test conflicts with supreme court case law.

### B. Specific Action

Having determined that the City, as a home rule unit, has the power to regulate outdoor advertising signs, I next turn to the question whether the Act preempts the authority of a home rule unit to regulate such signs. The City contends that, if the legislature desired to preempt home rule municipalities from enacting and enforcing regulations requiring the

alteration or removal of signs without monetary compensation or to declare the provisions of the Act to be under exclusive state control, the legislature had an obligation to specifically state its intended preemption or exclusivity. According to the City, because there is no showing of any intent to limit such authority in the Code, the Act, or the 1993 amendment, then its constitutional home rule powers permit it to exercise concurrent jurisdiction over the elimination of nonconforming, outdoor advertising signs through its sign regulations.

Viacom argues that the entire Code and Act are matters primarily of statewide concern and therefore beyond a municipality's home rule powers. According to Viacom, a provision in the Code is not required to specifically state that it applies to home rule municipalities in order to have uniform statewide application. J.T. Land Group, the Robinette Trust, and the Robinette Estate contend that the legislature and judiciary have long been actively involved in establishing the right to and defining and analyzing the value of just compensation under the Act. In its brief, Paramount argues that, if the legislature had intended to exclude home rule municipalities from the Act's reach, it would have expressly done so and would have selected a more precise term than "any municipality."

The legislature can restrict the concurrent exercise of a home rule unit's power by enacting a law that specifically limits such power. Scadron, 153 Ill. 2d at 187-88. However, unless a state law specifically states that a home rule unit's power is limited, then the home rule unit's power to act concurrently with the state cannot be considered restricted. Scadron, 153 Ill. 2d at 188. The majority's reliance on the Fourth District's Normal decision for the proposition that the proper inquiry in these cases is whether an ordinance conflicts with or runs contrary to state law is misplaced. Our supreme court has instructed that, to

limit home rule powers, the legislature must specifically say the "statute constitutes a limitation on the power of home rule units to enact ordinances that are <u>contrary to or inconsistent with the statute</u>." (Emphasis added.) <u>City of Chicago v. Roman</u>, 184 Ill. 2d 504, 520 (1998); see also <u>City of Champaign v. Sides</u>, 349 Ill. App. 3d 293, 299 (2004) (a limitation on a home rule unit's power, even only to the extent the ordinance is inconsistent with a state statute, must be specifically stated by the legislature). "Comprehensive" legislation is insufficient to declare the State's exercise of power to be exclusive. <u>Roman</u>, 184 Ill. 2d at 517; see also <u>American Health Care Providers, Inc. v. County of Cook</u>, 265 Ill. App. 3d 919, 928 (1994) ("[t]he General Assembly cannot express an intent to exercise exclusive control over a subject through coincidental comprehensive regulation").

The supreme court has decided that a general reference to municipalities in a state statute is not sufficient to preempt home rule powers. In <u>Scadron</u>, the supreme court held that the legislature did not specifically express its intention to limit a home rule unit's concurrent power to regulate advertising signs where the statute in question, which regulated outdoor advertising near federally funded highways, referred simply to municipal zoning authorities. <u>Scadron</u>, 153 Ill. 2d at 188. The statutory provision in that case read, in relevant part: " 'In zoned commercial and industrial areas, whenever <u>a</u> State, county or <u>municipal zoning authority</u> has adopted laws or ordinances, which include regulations with respect to the size, lighting and spacing of signs *** the provisions of Section 6 [containing size, light, and spacing limitations] shall not apply to the erection of signs in such areas.' (Emphasis added.) Ill. Rev. Stat. 1987, ch. 121, par. 507 [(now 225 ILCS 440/7 (West 2002))]." <u>Scadron</u>, 153 Ill. 2d at 172. Given this language, the issue in the case was not whether the legislature had specifically declared that the State had exclusive power to

regulate signs--the quoted section gave municipalities the power to regulate signs--but whether it had specifically limited home rule units' power to concurrently regulate outdoor advertising signs along with the state. The court was not persuaded that the statutory language was sufficiently specific to include home rule municipalities. Noting that "[t]he legislature is perfectly capable of being specific when it wants to be" (Scadron, 153 Ill. 2d at 188), the court held that the statute did not preempt the authority of home rule municipalities to regulate--including via more restrictive regulations that included a total ban on signs under certain circumstances--outdoor advertising signs in areas subject to the statutory provision. Scadron, 153 Ill. 2d at 188-89.

As Scadron instructs, a general reference to a municipality, which perhaps in other contexts can be read to encompass all types of municipalities, does not satisfy the specificity requirement of section 6(i) of the constitution. Accordingly, by referring to "any municipality," I conclude that the legislature did not specify that section 7--101 of the Act applies to home rule municipalities.

### C. Proper Relationship

I turn next to the relationship between the City's ordinance and the Act. Because the legislature, as I determined above, has not specifically limited the power of home rule units when ordinances have the effect of taking or damaging private property, defendants are effectively asking this court to curtail the City's power by invalidating its sign ordinance. See Scadron, 153 Ill. 2d at 190. Our supreme court has cautioned, however, " 'if the constitutional design is to be respected, the courts should step in to compensate for legislative inaction or oversight only in the clearest cases of oppression, injustice, or interference by local ordinances with vital state policies.' " (Emphasis omitted.) Scadron,

153 Ill. 2d at 190, quoting D. Baum, A Tentative Survey of Illinois Home Rule (Part I): Powers & Limitations, 1972 U. Ill. L.F. 137, 157.

The City relies on City of Wheaton v. Sandberg, 215 Ill. App. 3d 220 (1991). In that case, the city of Wheaton enacted an ordinance that permitted it to determine whether a parcel of land was in need of redevelopment and, if so, to designate the area a redevelopment area and acquire the land by gift, purchase, or condemnation for the purpose of redevelopment. This court applied the three-part test set forth above. Relying on Yehling, we first held that the city's exercise of eminent domain power was a valid home rule power pertaining to local government and affairs. Sandberg, 215 Ill. App. 3d at 224. After determining that the legislature did not specifically limit or preempt this power under the Commercial Renewal and Redevelopment Areas Act of the Illinois Municipal Code (Ill. Rev. Stat. 1987, ch. 24, par. 11--74.2--1 et seq. (now 65 ILCS 5/11--74.2--1 et seq. (West 2002))), we turned to the determination of the proper relationship between the ordinance and the state statute; specifically, whether the statute, which set minimum requirements for a finding of blight, created a scheme of uniform standards by which even home rule units must abide. Finding that the ordinance contained a broader definition of a blighted or redevelopment area than the statute and distinguishing cases that held that constitutional convention committee comments concerning environmental legislation showed an intent that the legislature provide leadership in that area, we held that there was no evidence indicating the necessity of uniform standards under the statute and we did not perceive an overriding policy interest on the state's part in keeping the standards uniform. Sandberg, 215 Ill. App. 3d at 226.

No. 2--04--0719

The City argues that there is no overriding policy interest in having uniform standards for compensating owners for the loss of nonconforming signs, because sign regulation varies from municipality to municipality. I agree. As the Scadron court noted, "[m]unicipalities have traditionally played an important role in regulating outdoor advertising signs." Scadron, 153 Ill. 2d at 176. Here, defendants have not identified any statewide interest that needs to be protected, nor have they identified a problem with commercial advertising signs that necessitates adoption of uniform state standards.

Having determined that section 7--101 does not apply to a home rule entity, I do not reach additional arguments addressed by the parties that are premised on the application of section 7--101.

## II. UNLAWFUL TAKING

Next, I address the City's contention that enforcement of its ordinance does not result in a taking without just compensation. The fifth amendment to the United States Constitution provides in relevant part that "private property [shall not] be taken for public use, without just compensation." U.S. Const., amend. V.

The parties characterize their dispute as an inverse condemnation claim. As distinguished from eminent domain, inverse condemnation describes the manner in which a landowner recovers compensation for a taking of its property when condemnation proceedings have not been instituted. Tim Thompson, Inc. v. Village of Hinsdale, 247 Ill. App. 3d 863, 884 (1993). A land-use regulation does not constitute a taking if it substantially advances legitimate state interests and does not deny any owner economically viable use of its land. National Advertising Co. v. Village of Downers Grove, 204 Ill. App. 3d 499, 512 (1990). Although property may be regulated to a certain extent, if

the regulation " 'goes too far,' " it will be recognized as a taking. <u>Lucas v. South Carolina Coastal Council</u>, 505 U.S. 1003, 1014, 120 L. Ed. 2d 798, 812, 112 S. Ct. 2886, 2893 (1992), quoting <u>Pennsylvania Coal Co. v. Mahon</u>, 260 U.S. 393, 415, 67 L. Ed. 322, 326, 43 S. Ct. 158, 160 (1922).    Relying on the ordinance's stated purpose, the City argues that the ordinance advances legitimate governmental interests in the public health, safety, and welfare by securing adequate natural light, limiting and controlling environmental pollution, conserving the taxable value of land and buildings, enhancing aesthetic values throughout the City, promoting traffic safety, and avoiding or lessening congestion in the public streets.

Paramount argues that the City did not perform any independent evaluation to test the validity of its ordinance restrictions and asserts that the City offered no evidence to support a link between traffic safety and smaller advertising signs. Even more troubling to Paramount is the fact that the restrictions are premised on certain aesthetic judgments, which it contends are necessarily subjective and should be carefully scrutinized to determine if they are only a public rationalization of an impermissible purpose.

Billboards are substantial hazards to traffic safety. See <u>Metromedia, Inc. v. City of San Diego</u>, 453 U.S. 490, 509, 69 L. Ed. 2d 800, 816, 101 S. Ct. 2882, 2893 (1981). I disagree with Paramount's assertion that the City had a duty to conduct an independent study to assess whether there exists a link between traffic safety and smaller advertising signs. Paramount has not cited to any authority for that proposition. Indeed, safety is a long-standing concern, and cases upholding billboard regulations on this basis can be found as far back as the early 1900s. See <u>Scadron</u>, 153 Ill. 2d at 177.

The role of aesthetics in zoning is an element of the public health, safety, and welfare. See Metromedia, 453 U.S. at 510, 69 L. Ed. 2d at 816, 101 S. Ct. at 2893-94 ("[i]t is not speculative to recognize that billboards by their very nature, wherever located and however constructed, can be perceived as an 'esthetic harm' "); City of Rolling Meadows v. National Advertising Co., 228 Ill. App. 3d 737, 746 (1991) (aesthetics and traffic safety are valid policy reasons for governmental regulation of outdoor signs); Dingeman Advertising, Inc. v. Village of Mt. Zion, 157 Ill. App. 3d 461, 464 (1987) (same); see also City of Belleville v. Kesler, 101 Ill. App. 3d 710, 714 (1981) (sign ordinance regulating size and location of advertising signs on the basis of enhancing community appearance as well as protecting public from injury due to potentially hazardous location of a sign held constitutional on ground that it was related to public welfare).

In National Advertising Co., this court affirmed summary judgment for the village, holding that the plaintiff, which leased property near a highway and which had applied for and was denied a permit and a variance to display an off-premises advertising sign, did not suffer a taking as a result of a village ordinance that restricted such signs to 20 feet in height and 200 square feet in area and where the plaintiff's sign exceeded these restrictions. National Advertising Co., 204 Ill. App. 3d at 512. We determined that no taking resulted from the ordinance, because the ordinance advanced a legitimate governmental interest in traffic safety and aesthetics. National Advertising Co., 204 Ill. App. 3d at 512. Noting that the plaintiff was a lessee, we further determined that there was no evidence that the property's owner was denied economically viable use of his land and that the village had not interfered with the plaintiff's legitimate investment-backed expectations

because, at all times, the plaintiff had notice that its proposed sign violated the village's ordinance. National Advertising Co., 204 Ill. App. 3d at 512.

Here, Paramount has not specified what impermissible purpose the City had in passing the ordinance. Without a proper allegation of an ulterior motive, one cannot presume it exists. See Metromedia, 453 U.S. at 510, 69 L. Ed. 2d at 817, 101 S. Ct. at 2894; see also National Advertising Co., 204 Ill. App. 3d at 507.

Paramount next argues that the City's ordinance results in the taking of all economically viable use of Paramount's property. It contends that, if the City is permitted to enforce its ordinance, the size and height of Paramount's sign would be reduced to such a degree as to effectively make it worthless for commercial advertising purposes. Paramount relies on an affidavit by David L. Quas, its president. In his affidavit, Quas stated that he had personal knowledge of the facts surrounding the transaction. He further stated that the value of a billboard sign is derived from the number of people viewing the sign and its ability, via its location, size, and height, to be clearly seen by the public. The reduction in the size and height of signs contemplated by the City's ordinance, according to Quas, "is below the industry standard for production of advertising signs." In paragraph 6 of his affidavit, Quas further stated that, if the City were able to enforce its ordinance against Paramount, "the size and height of the sign would be reduced to such a degree as to effectively make it worthless for commercial advertising purposes." In the next paragraph, he explained that the sign would not be "effectively visible to the public because it would be too small and too low" and, therefore, its advertising value and Paramount's ability to obtain advertising "will be significantly diminished." In paragraph 8, Quas stated that the aforementioned reductions would deprive Paramount of all the economically viable use of its interest in the sign.

Supreme Court Rule 191(a) provides that affidavits in support of or in opposition to a motion for summary judgment shall be made on the personal knowledge of the affiant and shall consist not of conclusions, but of facts admissible in evidence and shall affirmatively show that the affiant could testify competently thereto. Official Reports Advance Sheet No. 8 (April 17, 2002), R. 191(a), eff. July 1, 2002. Affidavits in support of a motion for summary judgment are strictly construed and should leave no question as to the movant's right to judgment. Weber v. Woods, 31 Ill. App. 3d 122, 130 (1975). A court does not take as true unrebutted affidavits, or portions thereof, that do not comply with Supreme Court Rule 191(a). Forrester v. Seven Seventeen HB St. Louis Redevelopment Corp., 336 Ill. App. 3d 572, 579 (2002).

I believe Quas's affidavit is conclusory and does not allege sufficient facts to permit this court to resolve this issue in Paramount's favor or to even raise a material factual issue precluding the grant of summary judgment. Initially, I note that Quas's affidavit does not explain the nature and extent of his experience in the billboard advertising industry. Where an affidavit asserts an opinion, it must first qualify as expert testimony. Go-Tane Service Stations, Inc. v. Sharp, 78 Ill. App. 3d 785, 789 (1979). Further, Quas does not explain where the Paramount sign is located in relation to Route 83 and how a height reduction, for example, would specifically affect its visibility. Would the sign be less visible due to obstructions such as trees, buildings, or a fence, or would it be less visible, and thus less effective, solely because it is smaller and shorter? I find troubling Quas's statement in paragraph 7 of his affidavit, wherein he asserts that the sign would "not be effectively visible" and thus its value would be "significantly diminished" because it would be "too small and too low." The quoted phrases are conclusory. See, e.g., Greystone Hotel Co. v. City of New York, 13 F. Supp. 2d 524, 528 (S.D.N.Y. 1998) (analyzing "economically viable use" element, court found the phrase "barely making a profit" conclusory). Moreover, Quas does not provide any facts showing how

much smaller and lower a sign complying with the ordinance would be as compared with the current sign, nor does he provide any facts linking signs of the size and height contemplated by the City's ordinance to any <u>specified</u> diminished advertising value or ability to obtain advertisers. Under Rule 191(a), an affidavit must set forth with particularity the facts upon which the claim is based. <u>Go-Tane Service Stations, Inc.</u>, 78 Ill. App. 3d at 789 (even though affiant's 25 years' banking experience might have indicated he was qualified to express an opinion regarding markings on the back of checks, striking of affidavit was upheld on the basis that affidavit did not state specific facts that formed the basis of affiant's conclusion regarding the markings).

I believe that enforcement of the City's ordinance would not result in an unlawful taking.

### III. CONCLUSION

For the reasons stated above, I would reverse the trial court's order and remand the cause. This would result in the grant of summary judgment to the City on both the home rule powers and takings issues.