FIFTH DIVISION
May 28, 2010

No. 1-08-2436

| | | |
|---|---|---|
| GARY PALM, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| 2800 LAKE SHORE DRIVE CONDOMINIUM | ) | No. 00 CH 0679 |
| ASSOCIATION, an Illinois Not-for-Profit Corporation, | ) | |
| BOARD OF DIRECTORS of the 2800 LAKE SHORE | ) | |
| CONDOMINIUM ASSOCIATION, and KAY S. | ) | |
| GROSSMAN, Individually and as President of the Board. | ) | Honorable |
| | ) | Sophia Hall, |
| Defendants-Appellants, | ) | Judge Presiding. |
| | ) | |
| (The City of Chicago, | ) | |
| | ) | |
| Intervenor-Appellee.) | ) | |
| | ) | |

JUSTICE FITZGERALD SMITH delivered the opinion of the court:

This cause of action arose when Gary Palm (Palm) sought production of various books and records from 2800 Lake Shore Drive Condominium Association (Association), pursuant to the City of Chicago Condominium Ordinance (Chicago Municipal Code, §13-72-080 (2009)) (the Ordinance). The Association did not comply. Palm subsequently brought suit against the Association, the board of directors of 2800 Lake Shore Condominium Association (Board), and Kay S. Grossman (Grossman), individually and as president of the Board (collectively, defendants). Defendants claimed that the Association did not have to comply with the Ordinance because it conflicted with existing Illinois law and, therefore, was invalid. The City of Chicago

(City) intervened, alleging that the Ordinance was validly enacted according to its home rule power. The trial court granted Palm's and the City's (collectively plaintiffs') motion for summary judgment in regards to the production of various records, finding that the Ordinance was valid and did not conflict with Illinois law. The trial court also granted interim attorney fees to Palm's attorney. Defendants now appeal, alleging that (1) the trial court erred in granting summary judgment to plaintiffs because the Ordinance is invalid, (2) the trial court improperly awarded attorney fees at a rate of $300 per hour, (3) trial court erred in refusing to consider defendants' motion for sanctions, and (4) the trial court erred in granting Palm's request for documents pursuant to the Association's declaration. For the following reasons, we affirm.

## I. BACKGROUND

The 2800 Lake Shore Drive building is a condominium building. There are more than 700 units in the association. Grossman had served as a member of the Board since 1982 and also as president of the Board. Palm is a unit owner and served on the Board from 1992 to 1998.

While serving on the Board, Palm allegedly became aware of various improprieties and departures from association bylaws, including (1) Grossman exceeded her authority by taking action without authorization from the Board, (2) Grossman and the Association's counsel did not allow Board members access to Association documents, (3) Board members discussed condominium business, voted, and took action without giving proper notice to or opportunity for input from unit owners, (4) Grossman and management did not require bids on all contracts, (5) management awarded contracts to relatives or entities owned by relatives without proper notification to the Board, and (6) management did not hold "insider" contractors liable for faulty

2

workmanship. Accordingly, Palm requested access to certain Association records. Grossman and the Association counsel denied him access to such documents, claiming that he did not have the right to inspect association records. Palm subsequently filed suit.

Palm filed his original complaint on January 13, 2000, naming the Association as the sole defendant. Palm's single-count complaint asked the trial court to grant an order requiring the Association to allow him to inspect certain records, declaring members of the Board exempt from having to state a proper purpose in order to obtain records, and declaring that the Board may not take action except at an open meeting. The Association filed a motion to dismiss Palm's complaint, alleging in part that his prayer for relief was inconsistent with Illinois's Condominium Property Act (765 ILCS 605/1 *et seq*. (West 2004)) and the Ordinance. The trial court granted the Association's motion to dismiss the complaint, without prejudice.

Palm then filed a first amended complaint against defendants. Count IV, the only count at issue in this appeal, alleged that the Association failed to produce books and records under the Ordinance, the Condominium Property Act, the General Not For Profit Corporation Act of 1986 (805 ILCS 105/101.01 *et seq*. (West 2004)), and the Association's declaration. Defendants filed a motion to dismiss. The trial court entered an order requiring the parties to submit supplemental briefs on whether the City properly enacted the Ordinance under its home rule authority, or whether state law preempts the Ordinance. The parties filed supplemental briefs regarding such issue.

The trial judge, Judge Sidney Jones, entered a memorandum opinion and order on December 11, 2000, finding that Illinois law preempted the City's home rule authority to enact

No. 1-08-2436

the Ordinance, and thus, the Ordinance was invalid.

Palm then filed a motion to reconsider, and defendants filed a response. Soon thereafter, the City filed a petition to intervene in support of Palm's position. The trial court allowed the City to intervene, but denied Palm's motion to reconsider. Plaintiffs then each filed a second motion to reconsider, and defendants responded.

A new trial judge granted the plaintiffs' second motion to reconsider. The new trial judge vacated the prior dismissal order and found that neither the Condominium Property Act nor the General Not for Profit Corporation Act preempts the Ordinance.

On January 31, 2003, the trial court entered summary judgment in favor of Palm on count IV and ordered the Association to immediately produce the requested documents to Palm.

Palm then petitioned the court for an award of interim attorney fees. Palm submitted that an hourly rate of $300 was reasonable and appropriate. Palm noted that he paid his attorney $200 an hour, which was a reduced hourly rate. Palm alleged that it is typical in litigation where attorney fees are recoverable pursuant to statute for an attorney and client to enter into a fee agreement where the client pays a reduced hourly rate, with the reasonable attorney fees to be determined upon the conclusion of the case. Palm filed an affidavit of retired Judge Kenneth Gillis in support of his contention that $300 was a reasonable hourly rate, based on the market value of the work done. In response to Palm's petition, defendants argued that the court should not entertain issues regarding attorney fees until the conclusion of the litigation and that Palm was not necessarily the "prevailing plaintiff" under the ordinance. Defendants filed a motion for sanctions against Palm for violation of the trial court's January 20, 2006, order by disclosing in

4

public filings the billing rate for the Association's regular counsel. Defendants requested that, as a sanction, Palm's request for interim attorney fees be denied. The trial court refused to consider defendants' motion for sanctions and continued such motion generally.

On August 26, 2008, the trial court granted Palm's petition for interim attorney fees and found him to be the prevailing party under the Ordinance. The trial court awarded Palm fees at a rate of $300 per hour for the period of time from November 1, 2001 to January 31, 2003. Defendants now appeal the January 31, 2003, order granting Palm summary judgment, and the August 26, 2008, order granting interim attorney fees.

## II. ANALYSIS

On appeal, defendants claim that (1) the trial court erred in granting summary judgment to plaintiffs because the Ordinance is invalid, (2) the trial court improperly awarded attorney fees at a rate of $300 per hour, (3) the trial court erred in refusing to consider defendants' motion for sanctions, and (4) the trial court erred in granting Palm's request for certain documents pursuant to the declaration.

### A. Ordinance a Valid Exercise of City's Home Rule Power

Defendants' first argument on appeal is that the trial court erred in granting summary judgment to plaintiffs because the Ordinance upon which plaintiffs relied on is invalid. Specifically, defendants allege that the portion of the Ordinance relating to the production of a condominium association's financial records is in direct conflict with both the Condominium Property Act and the Illinois General Not for Profit Corporation Act. Plaintiffs respond that the Ordinance's provision authorizing inspection of association records by unit owners is a valid

No. 1-08-2436

exercise of the City's home rule power. We agree with the plaintiffs.

The trial court's ruling that the Ordinance was an appropriate exercise of home rule authority presents a question of law, which this court reviews *de novo*. People v. Whitney, 188 Ill. 2d 91, 98 (1999).

Under the Illinois Constitution, a municipality with a population exceeding 25,000 is deemed a "home rule unit" and is granted authority to enact laws relating to the rights and duties of its citizens:

> "[A] home rule unit may exercise any power and perform any function pertaining
>
> to its government and affairs including, but not limited to, the power to regulate
>
> for the protection of the public health, safety, morals and welfare; to license; to
>
> tax; and to incur debt." Ill. Const. 1970, art. VII, §6(a).

There is no debate that the City of Chicago is a home rule unit. The above provision was intended to give home rule units like Chicago the broadest powers possible to regulate matters of local concern. Scadron v. City of Des Plaines, 153 Ill. 2d 164, 174 (1992). In addition, the Illinois Constitution provides that the "[p]owers and functions of home rule units shall be construed liberally." Ill. Const. 1970, art. VII, §6(m). Here, defendants do not argue that the City did not have home rule power to enact the Ordinance. Rather, they argue that Illinois law conflicts with the Ordinance and thus preempts the Ordinance. We disagree.

The Ordinance states in pertinent part:

> "No person shall fail to allow unit owners to inspect the financial books
>
> and records of the condominium association within three business days of the time

6

written request for examination of the records is received." Chicago Municipal

Code §13-72-080 (2009).

The two provisions that defendants claims are in conflict with the Ordinance are found in

the Condominium Property Act and the General Not for Profit Corporation Act. The provision in

the Condominium Property Act authorizes any member of a condominium association to inspect,

examine, and make copies of certain association records at any reasonable time, at the

association's principal office, when the request is made in writing and with particularity, and

provides that the association's failure to make the records available within 30 days of receipt of

the request constitutes a denial. 765 ILCS 605/19(b), (e) (West 2008). The General Not for

Profit Corporation Act allows any member of such a corporation who is entitled to vote to

inspect the corporation's books and records "for any proper purpose at any reasonable time."

805 ILCS 105/107.75 (West 2008). Defendants argue that these two provisions are in direct

conflict with the Ordinance and, therefore, the Ordinance is invalid.

However, "[a] statute intended to limit or deny home rule powers must contain an express

statement to that effect," Scadron, 153 Ill. 2d at 187, quoting Stryker v. Village of Oak Park, 62

Ill. 2d 523, 529 (1976). Unless a state law "*specifically* states that a home rule unit's power is

limited, then the authority of the a home rule unit to act concurrently with the State cannot be

considered restricted." (Emphasis in Origina.) Scadron, 153 Ill. 2d at 188. "'Comprehensive'

legislation is insufficient to declare the state's exercise of power to be exclusive." City of

Chicago v. Roman, 184 Ill. 2d 504, 517 (1998). To meet the requirements of section 6(h) of the

Illinois Constitution, legislation must contain "express language that the area covered by the

legislation is to be exclusively controlled by the State." Village of Bolingbrook v. Citizens Utilities Co. of Illinois, 158 Ill. 2d 133, 138 (1994). "It is not enough that the State comprehensively regulates an area which otherwise would fall into home rule power." Citizens Utilities, 158 Ill. 2d at 138. "The General Assembly cannot express an intent to exercise exclusive control over a subject through coincidental comprehensive regulation." American Health Care Providers, Inc. v. County of Cook, 265 Ill. App. 3d 919, 928 (1994).

Moreover, "[w]hen the General Assembly intends to preempt or exclude home rule units from exercising power over a matter, that body knows how to do so." Roman, 184 Ill. 2d at 517. "In many statutes that touch on countless areas of our lives, the legislature has expressly stated that, pursuant to section 6(h) or 6(i), or both, of article VII of the Illinois Constitution, a statute is declared to be an exclusive exercise of power by the state and that such power shall not be exercised by home rule units." Roman, 184 Ill. 2d at 517.

Applying these principles to the case at bar, neither the Condominium Property Act nor the General Not for Profit Corporation Act specifically excludes home rule units from governing the manner by which a unit owner can gain access to a condominium association's financial books and records. Although the Ordinance does not contain the exact same language as the Condominium Property Act and the General Not for Profit Corporation Act, that by no means renders it invalid. See, *e.g.*, Scadron, 153 Ill. 2d at 194 ("'[t]he fact that the state has occupied some field of governmental endeavor, or that home rule ordinances are in some way inconsistent with state statutes, is not in itself sufficient to invalidate the local ordinances'"), quoting D. Baum, A Tentative Survey of Illinois Home Rule (Part II): Legislative Control, Transition

8

No. 1-08-2436

Problems, and Intergovernmental Conflict, 1972 Ill. L. F. 559, 572 ; Roman, 184 Ill. 2d at 519

(conflicting provisions of the Illinois Criminal Code and the Unified Code of Corrections did not

preempt home rule ordinance prescribing more stringent minimum prison sentence for assault

against the elderly where General Assembly did not specifically limit home rule power);

Kalodimos v. Village of Morton Grove, 103 Ill. 2d 483, 505-06 (1984) (state statutes regulating

firearms did not preempt more restrictive local laws prohibiting possession of handguns where

statutes did not specifically state that firearms control was the subject of exclusive state control);

City of Evanston v. Create, Inc., 85 Ill. 2d 101, 104-09 (1981) (state regulation of landlord-tenant

relationship did not preempt authority of home rule municipalities to regulate that relationship

differently or more strictly).

Accordingly, because we find that neither the Illinois Condominium Act nor the Illinois

General Not for Profit Corporation Act specifically prohibits a home rule unit from governing the

process by which a unit owner may gain access to a condominium association's financial records,

the Ordinance's provisions regarding this subject are valid.  Defendants' reliance on City of

Oakbrook Terrace v. Suburban Bank & Trust Co., 364 Ill. App. 3d 506 (2006), does not convince

us otherwise.

In Oakbrook Terrace, the court concluded that the a city ordinance that provided for a

two-year amortization period for existing nonconforming advertising signs was an invalid

exercise of home rule authority because it precluded the remedy of just compensation under the

Illinois Eminent Domain Act (735 ILCS 5/7-101 (West 1998)).  Oakbrook Terrace, 364 Ill. App.

3d at 516-18.  The court found this to be the case despite the fact that there was no Illinois law in

9

existence which expressly precluded the exercise of home rule authority in this area. Instead, the court stated that ordinances which contravene state statutes have been deemed invalid exercises of home rule authority. Oakbrook Terrace 364 Ill. App. 3d at 518.

We disagree with the majority opinion in Oakbrook Terrace and instead choose to follow our supreme court's precedent. As the dissent in Oakbrook Terrace noted, "Our supreme court has instructed that, to limit home rule powers, the legislature must say specifically the 'statute constitutes a limitation on the power of home rule units to enact ordinances that are contrary to or inconsistent with the statute.' " (Emphasis omitted.) Oakbrook Terrace, 364 Ill. App. 3d at 522 (Callum, J., dissenting), quoting Roman, 184 Ill. 2d at 520. The dissent went on to say:

> "The supreme court has decided that a general reference to municipalities
> in a state statute is not sufficient to preempt home rule powers. In Scadron, the
> supreme court held that the legislature did not specifically express its intention to
> limit a home rule unit's concurrent power to regulate advertising signs where the
> statute in question, which regulated outdoor advertising near federally funded
> highways, referred simply to municipal zoning authorities. [Citation.]T he
> statutory provision in that case read, in relevant part: 'In zoned commercial and
> industrial areas, whenever a State, county or municipal zoning authority has
> adopted laws or ordinances, which include regulations with respect to the size,
> lighting and spacing of signs *** the provisions of Section 6 [containing size,
> light, and spacing limitations] shall not apply to the erection of signs in such
> areas.' [Citation.] Given this language, the issue in the case was not whether the

legislature had specifically declared that the State had exclusive power to regulate signs - the quoted section gave municipalities the power to regulate signs - but whether it had specifically limited home rule units' power to concurrently regulate outdoor advertising signs along with the state. The court was not persuaded that the statutory language was sufficiently specific to include home rule municipalities. Noting that '[t]he legislature is perfectly capable of being specific when it wants to be' [citation], the court held that the statute did not preempt the authority of home rule municipalities to regulate - including via more restrictive regulations that included a total ban on signs under certain circumstances - outdoor advertising signs in areas subject to the statutory provision. [Citation.]" (Emphasis omitted.) Oakbrook Terrace, 364 Ill. App. 3d at 522.

We agree with the dissent in Oakbrook Terrace and note that the majority opinion in that case failed to cite to any of our supreme court cases we discussed above. Accordingly, we are unpersuaded by defendant's reliance on Oakbrook Terrace and maintain that the provisions of the Ordinance at issue constituted a valid exercise of the City's home rule authority.

Defendants also allege, however, that the portion of the Ordinance allowing for attorney fees to a unit owner who successfully obtains records from an association is preempted by existing Illinois law and is therefore invalid. Plaintiffs respond first that this issue is waived, and second, that the City has home rule authority because there is no existing state law that specifically limits the remedies that a home rule unit may enact in particular circumstances. We agree with plaintiffs.

11

Initially we note that "[i]t is well settled that issues not raised in the trial court are deemed waived and may not be raised for the first time on appeal." Haudrich v. Howmedica, Inc., 169 Ill. 2d 525, 536 (1996). Although defendants raised the issue of whether the ordinance provisions regarding records inspection by condominium owners were outside the City's home rule power, they failed to raise the issue of whether the ordinance provisions regarding attorney fees were also outside the City's home rule power. Accordingly, defendants have waived such issue on review.

However, even if we were to nevertheless reach this issue, we would find that the attorney fees provision in the Ordinance would not be preempted by state law and would be a valid exercise of the City's home rule power. As noted above, home rule units have the same power as the sovereign, except where such powers are specifically limited by the General Assembly. Roman, 184 Ill. 2d at 513; City of Evanston, 85 Ill. 2d at 115.

There is no question that Illinois has the power to provide for an award of attorney fees to prevailing plaintiffs. See Taghert v. Wesley, 343 Ill. App. 3d 1140, 1147-48 (2003) (court upheld Illinois Condominium Property Act's provision for attorney fees where a plaintiff succeeds in an action against a condominium association to compel disclosure of books and records); Becovic v. City of Chicago, 296 Ill. App. 3d 236 (1998) (upholding attorney fees provision under Illinois Human Rights Act). Thus, the City of Chicago, as a home rule unit, has the same power to provide for attorney fees to a prevailing party, as long as it is not specifically preempted by state legislature. See Atkins v. City of Chicago Comm. on Human Relations, 281 Ill. App. 3d 1066, 1077 (1996) (upholding award of attorney's fees by Chicago Commission on

Human Relations where Illinois Human Rights Act's provision for attorney fees in state matter did not limit that remedy by "denying or restricting the same right to local matters"). None of these Illinois statutes contradicts the fee provision in the Ordinance.

Defendants nevertheless rely on City of Naperville v. Lerch, 198 Ill. App. 3d 578 (1990), and Village of Glenview v. Zwick, 356 Ill. App. 3d 630 (2005), to support their proposition that state law preempts the Ordinance's provision on attorney fees. In Lerch, the court noted that the general rule is that absent a statute or agreement of the parties, the parties generally pay their own attorney fees. Lerch, 198 Ill. App. 3d at 583-84. The court went on to hold that a home rule ordinance is not a statute, so a home rule unit's ordinance that provided for an attorney fee award contrary to the general rule was unauthorized. Lerch, 198 Ill. App. 3d at 583-84. The court noted, "we have found no case law, nor has plaintiff provided any, that raises an ordinance of a municipality *** to the level of a statute of the General Assembly." Lerch, 198 Ill. App. 3d at 584.

We agree with plaintiffs, however, that this holding cannot be reconciled with section 6(i) of the article VII of the Illinois Constitution. As stated by our supreme court in Roman eight years after Lerch, a home rule unit's ordinance is elevated to the level of a statute so long as (1) the ordinance pertains to the unit's government and affairs, and (2) the subject matter of the ordinance was not excluded or preempted. See Roman, 184 Ill. 2d at 513; Zwick, 356 Ill. App. 3d at 638. As noted above, defendants do not contend that the Ordinance does not pertain to the City's government and affairs. Additionally, the subject matter of attorney's fees has not been specifically preempted by the State. Accordingly, we are unpersuaded by defendants' reliance on

No. 1-08-2436

Lerch.

In Zwick, Glenview (a home rule unit), filed a complaint against the defendant alleging that defendant had violated its refuse ordinance. Zwick, 356 Ill. App. 3d at 631-32. Glenview sought attorney fees under a village ordinance which provided:

"'If the Village proceeds in any court of record to enforce and/or defend any provisions of the Municipal Code of the Village of Glenview, as from time to time amended, and is successful in either the enforcement or defense proceedings as referred to herein, the village shall recover its reasonable attorney[] fees and costs incurred in the course of those proceedings from the person and/or entity who has been found to have violated the Municipal Code of the Village of Glenview and/or who has initiated proceedings.'" Zwick, 356 Ill. App. 3d at 632, quoting Glenview Municipal Code, Ch. 1, §1.13 (eff. June 21, 1994).

The trial court held that the fee-shifting ordinance was an improper exercise of Glenview's home rule authority and the reviewing court affirmed. Zwick, 356 Ill. App. 3d at 641. The court found that the ordinance did not pertain to its local government and affairs because it discouraged those who received a citation from Glenview from challenging it in state court for fear that they would have to pay Glenview's attorney fees if they lost. This therefore impacted access to the state court system. See Zwick, 356 Ill. App. 3d at 641. The court noted, "Glenview's fee-shifting ordinance represents a real and immediate danger to a citizen's right to challenge a Glenview ordinance he or she finds doubtful, as it discourages litigation concerning the validity of any of its ordinances." Zwick, 356 Ill. App. 3d at 641.

14

Conversely in the case at bar, the Ordinance provision in question states that "[i]n any action brought to enforce any provision of [the Ordinance] *** the prevailing plaintiff shall be entitled to recover, in addition to any other remedy available, his reasonable attorney fees." Chicago Municipal Code §13-72-100 (2009). The Ordinance does not state, as it did in Zwick, that if the plaintiff who brings the case does not prevail, he must pay the City's attorney fees. Therefore, the Ordinance's attorney fee provision is a consumer protection provision allowing plaintiffs to bring a meritorious action to enforce the Ordinance without fearing a financial loss. This provision in no way discourages litigation concerning the validity of the Ordinance, as it did in Zwick. See Zwick, 356 Ill. App. 3d at 641. Illinois courts have routinely upheld state and local attorney fees provisions that serve this purpose, as noted above. See also Pitts v. Holt, 304 Ill. App. 3d 871, 873 (1999) (upheld attorney fee provision in city's landlord-tenant ordinance because such "attorney fees provisions are meant to give a financial incentive to attorneys to litigate on behalf of those clients who have meritorious cases but who, due to the limited nature of the controversy, would not normally consider litigation as being in their client's financial best interest); Page v. City of Chicago, 299 Ill. App. 3d 450, 467-68 (1998) (upheld attorney fee provision in city's human rights ordinance and noted that "an award of attorney fees is required to ensure that individuals filing complaints, who are often economically disadvantaged, receive proper representation and to enforce the public policy goals behind the legislation"). Accordingly, we find defendants' argument that the fee provision in the Ordinance is invalid is without merit.

B. Amount of Attorney Fees

Defendants' next contention on appeal is that the trial court improperly awarded attorney fees at a rate greatly in excess of the amount of attorney fees incurred by Palm. Defendants allege that Palm contracted with his attorney to pay $200 per hour, and that Palm did in fact pay his attorney $200 per hour for his legal services, yet the trial court awarded Palm's attorney fees at a rate of $300 per hour. Palm responds that the $200 hourly rate was a reduced rate his attorney allowed him to pay, but that $300 is the reasonable rate based on the market value of the work  It is well settled that the party seeking attorney fees always bears the burden of presenting sufficient evidence from which the trial court can render a decision as to their reasonableness. LaHood v. Couri, 236 Ill. App. 3d 641, 648 (1992). An appropriate fee consists of reasonable charges for reasonable services; however, to justify a fee, more must be presented than a mere compilation of hours multiplied by a fixed hourly rate or bills issued to the client, since this type of data, without more, does not provide the court with sufficient information as to their reasonableness. LaHood, 236 Ill. App. 3d at 648. Rather, the petition for fees must specify the services performed, by whom they were performed, the time expended thereon, and the hourly rate charged therefor. LaHood, 236 Ill. App. 3d at 648-49. Because of the importance of these factors, it is incumbent upon the petitioner to present detailed records maintained during the course of the litigation containing facts and computations upon which the charges are predicated. LaHood, 236 Ill. App. 3d at 648-49.

Once presented with these facts, the trial court should consider a variety of additional factors such as the skill and standing of the attorney, the nature of the case, the novelty and/or difficulty of the issues and work involved, the importance of the matter, the degree of

16

responsibility required, the usual and customary charges for comparable services, the benefit to the client, and whether there is a reasonable connection between the fees and the amount involved in the litigation. LaHood, 236 Ill. App. 3d at 649. The decision of the trial court will not be reversed absent an abuse of discretion. LaHood, 236 Ill. App. 3d at 649.

In the case at bar, Palm provided the trial court with detailed records containing facts and computations upon which he predicated his charge for attorney fees. He also presented the court with information about his attorney's skill and standing, the nature of the case, the usual and customary charges for comparable services, and an affidavit of a retired judge in support of his petition for attorney fees. The trial court considered all these facts and found that the reasonable fee was $300 an hour for services rendered. We do not find that the trial court abused its discretion in coming to such conclusion.

### C. Motion for Sanctions

Defendants' next contention on appeal is that the trial court erred in refusing to consider their motion for sanctions alleging that Palm violated an order of the court. Defendants argue that if the trial court had considered the motion, the trial court would have struck down Palm's request for attorney fees based on his "blatant disregard for the court's January 20, 2006, order establishing the procedure for considering attorney's fees in this case." Palm responds that the motion for sanctions is not a part of this appeal, as it was continued in the trial court.

The trial court's January 20, 2006, order provided in pertinent part that "[t]he scope of discovery related to Plaintiff's pending interim fee petition, presented to the Court on or about September 19, 2005, will be governed by N.D. Ill. Local Rule 54.3 ('the Rule'), including the

confidentiality provisions of that Rule." The confidentiality provisions of Rule 54.3 provide as follows:

> "All information furnished by any party under this section shall be treated as strictly confidential by the party receiving the information. The information shall be used solely for purposes of fee litigation and shall be disclosed to other persons, if at all, only in Court filings or hearings related to the fee litigation. That party receiving such information who proposes to disclose it in a Court filing or hearing shall provide the party furnishing it with prior written notice and a reasonable opportunity to request an appropriate protective order." N.D. Ill. Local R. 54.3(d).

The parties then confidentially exchanged billing records relating to the time spent by each side on the matter, including hourly rates. Thereafter, Palm filed a motion for partial summary judgment, which disclosed the association's general counsel's hourly rate. Defendants then filed a motion for sanctions arguing that because the motion for partial summary judgment was a pleading unrelated to the fee litigation and not filed under seal, it constituted a violation of the trial court's January 20, 2006, order when it included general counsel's hourly rate. Defendants contended that the trial court should sanction Palm for such a violation by vacating his interim attorney fee award and requiring Palm to pay defendants' reasonable attorney fees incurred in preparing and presenting the motion for sanctions.

The trial court ordered that any issues related to the motion for sanctions were continued

generally, and then it issued its order granting Palm's request for attorney fees. Defendants argue that had the trial court considered their motion for sanctions, it would have struck Palm's request for interim fees based on his disregard for the January 20, 2006, order.

We first note that this section of defendants' brief contains absolutely no citations to legal authority whatsoever. Supreme Court Rule 341(h)(7) provides that an appellant's brief must contain "the contentions of the appellant and the reasons therefor, with citations of the authorities and the pages of the record relied on." 210 Ill. 2d R. 341(h)(7). Furthermore, if a point is not argued, it is waived and cannot be raised in a reply brief, oral argument, or petition for rehearing. 210 Ill. 2d R. 341(h)(7). "The well-established rule is that mere contentions, without argument or citation of authority, do not merit consideration on appeal." People v. Hood, 210 Ill. App. 3d 743, 746 (1991). "Contentions supported by some argument but by absolutely no authority do not meet the requirements of Supreme Court Rule 341([h])(7)." Hood, 210 Ill. App. 3d at 746. "A reviewing court is entitled to have the issues clearly defined with pertinent authority cited and is not simply a depository into which the appealing party may dump the burden of argument and research." Hood, 210 Ill. App. 3d at 746. Accordingly, we may treat the issue raised as having been waived for failure to cite authority.

Waiver aside, we find that this issue is not a final, appealable order and is therefore not properly before this court at this time. At trial, the court continued the motion for sanctions, choosing not to rule on it before granting plaintiffs partial summary judgment. Accordingly, the trial court's continuance was not a final and appealable order because the order did not finally determine the respondent's rights and status as to the matter of sanctions, and it was subject to

19

further determination by the court.  See In re Guzik, 249 Ill. App. 3d 95, 99 (1993).

D. Declaration Provisions

Defendants' final contention on appeal is that the trial court erred in allowing production of certain documentation pursuant to the association's declaration.  Defendants note that the trial court found that Palm was entitled to records based on both the Ordinance and section 6.05 of the declaration.  They argue that the trial court should not have allowed document requests based on section 6.05 of the Declaration because that section conflicts with section 19 of the Illinois Condominium Property Act (the Act) (765 ILCS 605/4.1 (b) (West 2004)), and therefore Palm's requests for certain documents should have been denied.  Specifically, defendants argue that section 6.05 of the declaration does not require a plaintiff to state a proper purpose for requests of financial records, while section 19 of the Act requires a plaintiff to state a proper purpose for requests of financial records.

We must first note that defendants have again failed to cite to a single point of authority in support of their proposition.  As noted above, Supreme Court Rule 341(h)(7) provides that an appellant's brief must contain "the contentions of the appellant and the reasons therefore, with citations of the authorities and the pages of the record relied upon."  210 Ill. 2d R. 341(h)(7).  "Contentions supported by some argument but absolutely no authority do not meet the requirements of Supreme Court Rule 341([h])(7)."  Hood, 210 Ill. App. 3d at 746.  Accordingly, we may treat this issue as waived for failing to cite to authority.

Waiver aside, we note that section 4.1(b) of the Act, which defendant relies on, provides that except to the extent otherwise provided by the declaration or other condominium instruments

recorded prior to the effective date of this Act, "in the event of a conflict between the provisions of the declaration and the bylaws or other condominium instruments, the declaration prevails except to the extent the declaration is inconsistent with this Act." 765 ILCS 605/4.1(a)(6)(b) (West 2004). Defendants claim section 6.05 of the declaration is inconsistent with section 19 of the Act and, therefore, the trial court erred permitting financial records to be produced to Palm.

Section 6.05 of the declaration states:

"The Board shall keep full and correct books and records in chronological order of the receipts and expenditures affecting the Common Elements, specifying and itemizing the maintenance and repair expenses of the Common Elements and any other expenses incurred. Such records and the vouchers authorizing the payments shall be available for inspection at the office of the Association, if any, by any Unit Owner or any holder of a first mortgage lien on a Unit Ownership, at such reasonable time or times during normal business hours as may be requested by the Unit Owners. Upon ten (10) days notice to the Board and payment of a reasonable fee, any Unit Owner shall be furnished a statement of his account setting forth the amount of any unpaid assessments or other charges due an owing from such Unit Owner."

Defendants point to section 19(a)(9) and section 19(e) of the Act as being inconsistent with the above provision. Such sections provide that an association member shall have the right

21

to inspect the books and records of account for the association's current and ten immediately preceding years, only for a proper purpose stated in writing. We do not find that the Act and the declaration are inconsistent just because one requires a proper purpose to be stated and one does not, before inspecting financial records. And even if we were to find that the Act superceded the declaration and Palm was required to state a proper purpose in writing, we would find that he did so. In his original letter to the association, Palm stated that he was seeking documents to establish fraud, mismanagement, or self-dealing. It has been held that a proper purpose for inspecting books and records under the Act is to establish corporate mismanagement, and this court has held that "where a unit owner asserted a good-faith fear of mismanagement of financial matters by the association, he established a proper purpose to inspect the records of the condominium association's delinquency reports and itemized bills." Taghert v. Wesley, 343 Ill. App. 3d 1140, 1146-47 (2003). Accordingly, we find that the trial court did not err in granting Palm's request for financial records.

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

TOOMIN, P.J., and HOWSE, J., concur.