2021 IL App (1st) 200411-U

FIFTH DIVISION
Order filed:  October 15, 2021

No. 1-20-0411

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| *In re* ESTATE OF GENEVA MIDDLETON, a/k/a JENNY MIDDLETON, a Disabled Person | ) ) ) | Appeal from the Circuit Court of Cook County. |
| (Karen Boscamp, Petitioner-Appellant and Cross-Respondent-Appellant, | ) ) ) | |
| v. | ) ) | No. 16 P 7055 |
| Steve D. Raminiak, Guardian *ad Litem*; Shirley Carfo, as Plenary Guardian of the Person of Geneva Middleton; and Devon Bank, as Plenary Guardian of the Estate of Geneva Middleton and Successor Trustee of the Louis DeSalvo Charitable Trust, Respondents-Appellees | ) ) ) ) ) ) ) | |
| (The People of the State of Illinois *ex rel*. Kwame Raoul, Cross-Petitioner-Appellee)). | ) ) ) ) | Honorable Susan K. Sullivan, Judge, presiding. |

_____

JUSTICE HOFFMAN delivered the judgment of the court.
Justices Cunningham and Connors concurred in the judgment.

**ORDER**

¶ 1 *Held*: We affirmed the judgment of the circuit court over the petitioner and crossrespondent'scontentions that the court erred in finding that she breached her fiduciary duties as trustee and ordering her to disgorge certain payments she received from the trust.

¶ 2 Karen Boscamp, the petitioner and cross-respondent, appeals from an order of the circuit court of Cook County, finding that she breached her fiduciary duties as co-trustee of the Louis J. DeSalvo revocable trust (trust) and ordering her to reimburse the trust for several expenditures that were not permitted under the trust's terms. On appeal, she argues that the evidence does not support the circuit court's finding that she breached her fiduciary duties and asks this court to reverse the circuit court's disgorgement order. For the reasons that follow, we affirm.

¶ 3 This appeal has its origins in an action initiated by the Office of the Cook County Public Guardian (Public Guardian) to adjudicate Geneva Middleton a disabled person. The facts giving rise to that action are as follows.

¶ 4 In May 2014, Louis J. DeSalvo, the trust's sole trustee, died. According to the terms of the trust, Middleton, his longtime romantic partner, and Boscamp, an attorney who drafted the final restatement of the trust, became co-trustees. Relevant to this appeal, the trust's restatement directed the co-trustees, upon DeSalvo's death, to pay various charities $5,000 each, provide Middleton with $300,000, and "give[ ]" her a condominium in Chicago, which she could "lease" or "sell." The remaining trust assets were to be retained by the co-trustees and invested so that Middleton could receive $30,000 per year for the remainder of her life. Upon Middleton's death, the remainder of the trust's assets were to be distributed to various charities. Along with these limitations, the trust also gave its co-trustees numerous powers in managing trust assets, as well as the power "[t]o pay all expenses incurred in the administration of the trust[ ], including reasonable

compensation to the trustee, and to employ and pay reasonable compensation to agents and counsel." Lastly, the trust provided that, in the event of a disagreement between Boscamp and Middleton, Middleton's decision controlled.

¶ 5 Late in 2016, an employee at a bank where the trust held an account contacted the Public Guardian after Middleton, who was 80 years old at the time, and Boscamp tried to withdraw a significant amount of money from the trust's account. The Public Guardian retained Dr. Geoffrey Shaw, a psychiatrist, to examine Middleton and determine her capacity to make personal or financial decisions. On November 4, 2016, Dr. Shaw met with Middleton at her home. Following that meeting, he authored a report concluding that Middleton had dementia and was incapable of making personal or financial decisions as a result.

¶ 6 On November 14, 2016, the Public Guardian filed a petition in the circuit court to adjudicate Middleton disabled by reason of dementia with severe cognitive defects. The next day, the court appointed Steve D. Raminiak as guardian *ad litem* (GAL) and ordered him to meet with Middleton, inform her about the Public Guardian's petition, and report back to the court.

¶ 7 On November 17, 2016, the GAL submitted his report. According to the report, the GAL met with Middleton at her home while James Macchitelli, who identified himself as her attorney, was present. Based on his meeting with Middleton, the GAL recommended that the Public Guardian be appointed as Middleton's temporary guardian. He also expressed concern that Boscamp was financially exploiting Middleton and asked that he be permitted to file a petition for an accounting of the trust's assets.

¶ 8 That same day, the circuit court entered an order appointing the Public Guardian as Middleton's temporary guardian, finding that the temporary guardianship was necessary because

Middleton had paid Boscamp "over $70,000.00 in legal fees and purchased [Boscamp] a $24,500.00 minivan." In a separate order entered the same day, the circuit court authorized the Public Guardian to direct Boscamp "to file an accounting of her actions," suspended all trustee powers for the trust, and allowed the Public Guardian to pursue an action to have Middleton and Boscamp removed as the trust's co-trustees.

¶ 9 On December 6, 2016, Shirley Carfo, Middleton's sister, filed a cross-petition, requesting to be appointed as guardian of Middleton's person.

¶ 10 Two months later, Macchitelli filed an appearance on behalf of Middleton, and Boscamp filed an appearance on behalf of the trust. In response, the GAL filed an emergency motion for an injunction prohibiting Boscamp or Macchitelli from communicating with Middleton and striking Macchitelli's appearance, as well as a motion to disqualify Macchitelli as Middleton's counsel. In support of those motions, the GAL argued that Boscamp and Macchitelli may have been financially exploiting Middleton, noting that Middleton was unaware that Macchitelli was representing her, Boscamp had admitted that she arranged the meeting between Middleton and Macchitelli, and Macchitelli had received a $3500 retainer.

¶ 11 On February 22, 2017, the circuit court granted the GAL's motion, ordering Boscamp to submit an accounting of the trust's assets and prohibiting Macchitelli and Boscamp from communicating with Middleton until the circuit court ruled on the accounting.

¶ 12 The next day, the circuit court granted Carfo's cross-petition to be appointed as plenary guardian of Middleton's person and discharged the Public Guardian as temporary guardian. The circuit court found that Middleton was disabled and "totally lack[ed] sufficient understanding or capacity to make or communicate responsible decisions concerning the care of *** her person,"

citing the reports of Dr. Shaw and the GAL. On March 9, 2017, the court appointed Devon Bank as plenary guardian of Middleton's estate.

¶ 13 On April 19, 2017, Boscamp submitted her initial accounting for the trust, and over the next year, she submitted a supplemental accounting and a second supplemental accounting, which is the operative accounting for purposes of this appeal. The second supplemental accounting listed the trust's disbursements from May 20, 2014, through December 31, 2016. Relevant to this appeal, the second supplemental accounting listed the following disbursements: a $5000 gift paid to Boscamp; $72,450 paid to Boscamp for attorney and trustee fees; $24,500 to purchase a minivan that is titled in Boscamp's name, and $2000 of Macchitelli's $3500 retainer. The accounting also showed that Middleton's expenses for 2015 and 2016 exceeded $30,000 per year.

¶ 14 The GAL and Devon Bank both filed objections to Boscamp's accounting, objecting to the above distributions. Specifically, they argued that the trust did not permit a gift to Boscamp, Boscamp's trustee and attorney fees indicate self-dealing, the minivan was purchased exclusively for Boscamp's benefit, and Macchitelli's representation did not benefit the trust.

¶ 15 On July 14, 2017, the GAL filed a motion to suspend Boscamp's trustee powers and appoint a successor trustee until such time as a hearing could be held to determine whether Boscamp should be removed as trustee. Boscamp opposed the GAL's motion, maintaining that the distributions were proper and that the trust was not at any risk.

¶ 16 On September 20, 2017, the court entered an order appointing Devon Bank as temporary trustee of the trust for 120 days. On January 5, 2018, Boscamp filed a motion seeking to be reinstated as trustee and have the court discharge Devon Bank as temporary trustee. In her motion, she also requested that the court discharge the GAL and dismiss his "charges" against her. On

January 11, 2018, the circuit court entered an order extending Devon Bank's temporary trusteeship until March 14, 2018, and directing Devon Bank to notify the Attorney General of Illinois of this action.

¶ 17 On February 23, 2018, the Attorney General entered an appearance on behalf of the State (the State), invoking his common law standing to intervene in proceedings relating to charitable remainder trusts. That same day, the State filed a cross-petition, seeking an accounting, an injunction, removal, surcharge, and other equitable relief against Boscamp. In its brief, the State argued that Boscamp violated the Charitable Trust Act (Act) (760 ILCS 55/1 *et seq.* (West 2018)) by failing to register the trust or file annual reports with the Attorney General's office and breached her statutory and common-law fiduciary duties by self-dealing and making unauthorized expenditures from the trust. Based on this misconduct, the State sought Boscamp's removal as trustee and opposed her motion to be reinstated as trustee.

¶ 18 On November 15, 2018, following written and oral discovery, the State moved for partial summary judgment on its claims that Boscamp violated the Act's registration and reporting requirements, noting that, during her deposition, Boscamp admitted that she did not register the trust or file any annual reports. The State argued that those violations were breaches of Boscamp's duties under section 15(a)(7) of the Act (760 ILCS 55/15(a)(7) (West 2018)) and requested that the circuit court permanently remove Boscamp as trustee and disgorge her trustee and attorney fees. In response, Boscamp argued that "more limited and more appropriate relief" should be awarded for her "technical failures" to follow the Act.

¶ 19 On April 23, 2019, the circuit court granted the State's motion for partial summary judgment, finding that Boscamp violated the Act and breached her fiduciary duties as trustee. The court

ordered that Boscamp be removed as trustee and that Devon Bank be appointed as successor trustee in her place. The court "reserved" ruling on the portion of the State's motion seeking disgorgement until a hearing could be held on Boscamp's accounting. In its oral pronouncement, the court stated that there "may be a genuine issue of material fact as it relates to whatever [Boscamp's] basis is for those fees that apparently she did receive."

¶ 20 In July 2019, the circuit court held a three-day bench trial on Boscamp's accounting and the issue of disgorgement. At trial, Boscamp testified that the trust conferred "discretionary power" to Middleton because the restatement stipulated that Middleton's decisions should control in the event of a disagreement. She stated that this discretionary power allowed Middleton to make whatever disbursements from the trust that she saw fit, including spending more than the $30,000 per year she was allotted, because DeSalvo "trusted that she would make the right decisions." Boscamp acknowledged that these expenses could diminish the amount of money that would otherwise be left over for the charitable beneficiaries, but she stated that DeSalvo did not want "all of the money to go to charity at [Middleton's] expense."

¶ 21 Regarding the $5000 payment, Boscamp testified that she did not solicit the money from Middleton and that Middleton told her it was a gift from DeSalvo. Boscamp acknowledged that such a gift was not provided for under the terms of the trust. As for the minivan, Boscamp testified that Middleton was "uncomfortable" in a sedan-style car and needed transportation to her doctor's appointments. According to Boscamp, Middleton purchased the van pursuant to her discretionary power to use trust funds to address her transportation needs. Boscamp acknowledged that she "legally" owned the van, she paid for the insurance on the van, the van was parked at her exhusband's home, the van is her only car in Illinois, she only drove Middleton to the doctor on

four occasions, and that she recently drove the van to a deposition without Middleton. Boscamp also acknowledged that the trust paid a portion of Macchitelli's retainer fee even though he provided services for Middleton, not the trust.

¶ 22 Boscamp also testified that she charged the trust a trustee fee for her services., amounting to $10,000 in 2014 and $5100 in 2015 for a total of $15,100. Boscamp stated that she kept records of the work she performed to earn the trustee fee, but they were located at Middleton's home. On cross-examination, she acknowledged that she did not have those records at trial and did not produce them to any party in this action. She also acknowledged that she incorrectly stated in a verified pleading in this case that she was not paid a trustee fee between 2014 and 2016.

¶ 23 Boscamp next testified regarding the $57,350 in attorney fees she received from the trust according to the accounting she provided to the court. In support, Boscamp introduced four invoices dated July 25, 2014, December 31, 2014, June 10, 2015, and February 18, 2016. The two invoices from 2014 were addressed to the trust, whereas the 2015 and 2016 invoices were addressed to Middleton personally. The July 25, 2014 invoice reflects a total of $20,860 for 59.6 hours of work. According to the accounting, the trust paid Boscamp two installments of $10,000 in 2014. The December 31, 2014 invoice reflects a total of $13,285 for 35.5 hours of work. There is an adjustment for a "professional discount" of $3250. The accounting indicates that the trust paid Boscamp $10,000 in 2015. Regarding the 2015 and 2016 invoices, Boscamp acknowledged that these invoices reflected work she performed for Middleton personally, not on behalf of the trust. She testified that Middleton paid the 2015 invoice with funds drawn from her personal account, but she paid the 2016 invoice with funds from the trust. The February 18, 2016 invoice reflects a total of $21,350 consisting of 55 hours of work. The accounting for 2016 shows that the

trust paid Boscamp $21,350 and $6000 in 2016. Boscamp did not produce an invoice detailing the work for which the trust paid her $6000.

¶ 24 Boscamp next introduced the evidence deposition of Dr. Mary Kelly, Middleton's primary physician. Dr. Kelly testified that she initially believed that Middleton's cognitive impairment was attributable to her anxiety and pain medication, which may have side effects including memory loss. In September 2014, Middleton told Dr. Kelly about "a brief period of mental status change" that Dr. Kelly attributed "to an extra dose of" pain medication. In March 2015, Middleton expressed concern over "short-term memory issues," so Dr. Kelly performed a mini mental status examination (MMSE)—a method of evaluating a patient's cognition—on which Middleton scored a 26 out of 30. Dr. Kelly explained that an MMSE score is just one factor to consider in evaluating a patient's mental state.

¶ 25 Dr. Kelly also recounted an incident in February 2016, when Middleton was taken to the emergency room, where "she was confused, crying, and yelling," scored a 19 out of 23 on an MMSE, and, when asked, could not draw a clock. After Dr. Kelly changed Middleton's anxiety medication, she reported that her alertness and cognition improved in August 2016. Dr. Kelly acknowledged that, in February 2017, Middleton had an MRI of her brain and that a neurologist found the results were "consistent with vascular dementia." Dr. Kelly testified that she never assessed Middleton's capability to handle her finances, including her ability to manage investments or a checking account.

¶ 26 Boscamp then rested.

¶ 27 Devon Bank presented Dr. Shaw, who testified that, based on his evaluation of Middleton, she lacked the capacity to make her own personal or financial decisions as of November 2016. Dr.

Shaw also opined that, based on his review of Middleton's medical records, she was displaying "cognitive deficits" as early as 2012 when she scored a 19 out of 30 on a MMSE. Although he could not be certain that dementia was causing those deficits in 2012, he testified that it was a possible cause. Dr. Shaw disagreed with Dr. Kelly's assessment that Middleton's medication could have been causing her cognitive difficulties. He explained that the highest dose of anxiety medication she was ever prescribed was "very small" and Middleton exhibited no physical symptoms (e.g., blood pressure or temperature changes) that would have suggested that medication was causing her cognitive deficiencies.

¶ 28 On August 13, 2019, the circuit court entered a written order. The court found that Boscamp violated her fiduciary duties as co-trustee because she failed to advise Middleton of her limitations as a co-trustee. The court stated that Boscamp's deference to Middleton as the "controlling trustee" was unsupported by the trust's text. Reviewing the specific transactions, the court concluded that the $5000 gift to Boscamp was not permitted by the trust's terms. Regarding the minivan purchased by the trust, the court found that Middleton's reasons for not objecting to the purchase and putting the vehicle in her name only were not persuasive. The court stated that Boscamp's testimony indicating that the restatement gave Middleton "discretionary" power to make purchases "here and there" rather than accepting a lump sum payment of $30,000 per year was "illogical" and unsupported by the restatement. As to Boscamp's trustee fees and attorney fees, the court found that the fees were "excessive and lack[ed] supporting documents." The court concluded that the trust had been mismanaged since DeSalvo's death in 2014 and the mismanagement interfered with the expectancy of the charitable remaindermen. The court removed Boscamp as trustee, but it could not "rule on any disgorgement or surcharge without more information."

¶ 29 On September 9, 2019, Devon Bank filed a motion for clarification and a request for disgorgement and return of trust funds, arguing that the court had sufficient information to order that Boscamp be compelled to disgorge the $5,000 gift, her $72,450 in attorney and trustee fees, and the $24,500 purchase price of the minivan. Two days later, the GAL filed a motion to reconsider the August 13, 2019 order, raising essentially the same arguments.

¶ 30 On October 23, 2019, the circuit court entered an amended order. The amended order is largely identical to the August 13, 2019 order, but it included some additional findings and also ordered Boscamp to disgorge the $5000 gift, $72,750 in attorney and trustee fees, the $24,500 cost of the minivan, and the $2000 paid toward Macchitelli's retainer. The court explained that it was ordering disgorgement because it had "previously found [Boscamp] in breach of her duties as trustee for a charitable remainder trust," she had "benefitted financially from her use of Trust funds," and she made "debits from the Trust [that] were not authorized."

¶ 31 On November 22, 2019, Boscamp filed a motion to reconsider the October 23, 2019 amended order, arguing that the circuit court should not have awarded disgorgement. Boscamp noted that the court's initial order found that there was insufficient evidence to support a disgorgement award and that no new evidence had been presented to warrant a different finding. Boscamp also asserted that no evidence had been presented that: Middleton was suffering from dementia while she was serving as a co-trustee; Boscamp engaged in self-dealing with trust assets; or her attorney and trustee fees were excessive. In response, the GAL, Devon Bank, and the State argued that the circuit court was free to amend its order to reflect the evidence presented at the hearing, which supported the court's disgorgement award.

¶ 32 On January 30, 2020, the circuit court denied Boscamp's motion to reconsider. In its oral pronouncement, the court explained that it entered its August 13, 2019 order before it had an opportunity to read the trial transcripts. The court stated that, after reviewing the transcripts, it decided to revise its order "regardless of [the] motions" filed by the GAL or Devon Bank. This appeal followed.

¶ 33 On appeal, Boscamp argues that the circuit court erred when it amended its August 13, 2019 order to require her to repay the trust for several expenditures executed by Middleton. Specifically, Boscamp contends that the evidence adduced at trial did not support the amended order.

¶ 34 Before proceeding any further, we must address Boscamp's failure to comply with Illinois Supreme Court Rules. As the appellant, Boscamp was required to file a brief that complied with Illinois Supreme Court Rule 341(h) (Ill. S. Ct. R. 341(h) (eff. Jan. 1, 2016)). "The rules of procedure concerning appellate briefs are rules and not mere suggestions." *Niewold v. Fry*, 306 Ill. App. 3d 735, 737 (1999). Failure to comply with the rules regarding appellate briefs is not an inconsequential matter. *Burmac Metal Finishing Co. v. West Bend Mutual Insurance Co.*, 356 Ill. App. 3d 471, 478 (2005). The purpose of the rules is to require parties before a reviewing court to present clear and orderly arguments so that the court can properly ascertain and dispose of the issues involved. *Zadrozny v. City Colleges of Chicago*, 220 Ill. App. 3d 290, 292 (1991). A brief that lacks any substantial conformity to the pertinent supreme court rules may justifiably be stricken. *Tannenbaum v. Lincoln National Bank*, 143 Ill. App. 3d 572, 574 (1986).

¶ 35 Rule 341(h)(6) (eff. Jan. 1, 2016) requires that an appellant's brief include a statement of facts, containing those facts "necessary to an understanding of the case, stated accurately and fairly without argument and comment ***." Here, Boscamp's statement of facts failed to provide this

court with the facts "necessary to an understanding of the case \*\*\*." Boscamp's statement of facts is nearly 9 pages long. However, most of that length, nearly 7 pages of it, comes from her quoting verbatim the entirety of the circuit court's August 13, 2019 order and portions of the October 23, 2019 amended order. There is virtually no discussion of the procedural history of the case or the context surrounding the circuit court's two orders. This failure to adequately state the facts of the case is especially problematic given that the record is nearly 3,000 pages long. Put simply, it was impossible for this court to understand what had occurred in this case based on Boscamp's statement of facts.

¶ 36 Equally as egregious is Boscamp's failure to comply with Rule 341(h)(7), which requires that an appellant's brief "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016). Boscamp's argument section does not contain any citations to authority beyond boilerplate citations to the standards for reviewing a bench trial and granting a motion to reconsider. Moreover, much of Boscamp's argument sections consists of conclusory statements, such as the following passage: "There is no evidence or finding of any self-dealing by Karen Boscamp. Contrary to the Attorney General's filing, Boscamp did not make any of the allegedly improper disbursements." Boscamp does not cite to any pertinent authority to support this position, nor does she cite to the record.

¶ 37 The State contends that Boscamp has forfeited her arguments on appeal due to her failure to cite to any pertinent authority in support of her argument on appeal. We agree. Mere contentions, without argument or citation to authority, do not merit consideration on appeal. *Palm v. 2800 Lake Shore Drive Condominium Ass'n,* 401 Ill. App. 3d 868, 881 (2010). "The appellate court is not a

depository into which a party may dump the burden of research." *People v. O'Malley,* 356 Ill. App. 3d 1038, 1046 (2005).

¶ 38    Forfeiture aside, we have reviewed the record and find no support for Boscamp's contentions on appeal that "there [was] no basis" for the circuit court to enter a disgorgement order. In its October 23, 2019 amended order, the court provided three independent grounds for ordering Boscamp to disgorge: she breached her duties as trustee by failing to comply with the Act; she benefited financially from her use of trust funds; and the expenditures were not permitted by the trust's terms.

¶ 39 As to the first of these grounds, Boscamp's violation of the Act, Boscamp essentially admitted in her opposition to the State's motion for partial summary judgment that the trust did not comply with the "technical reporting requirements" when she was acting as co-trustee. As such, she cannot now claim that it was error for the court to make such a finding.

¶ 40 Regarding the second ground for disgorgement, Boscamp benefitting financially from the use of trust funds, it is undisputed that Boscamp received a $5000 gift from the trust, $72,450 in trustee and attorney fees, and a minivan worth $24,500, all of which were purchased with trust funds. Under the Act, Boscamp had a duty as trustee to avoid self-dealing and conflicts of interest and to operate the trust for the best interest of the beneficiaries. See 760 ILCS 55/15(a)(1), (6) (West 2014). The court found Boscamp's testimony regarding these payments unpersuasive and that she lacked supporting documentation. Reviewing Boscamp's testimony and the exhibits she introduced at trial, we cannot say that such a finding was against the manifest weight of the evidence. See *Gearhart v. Gearhart*, 2020 IL App (1st) 190042, ¶ 146 (applying manifest-weight standard to circuit court's finding, following a bench trial, that trustee violated fiduciary duties).

¶ 41 The court's final independent ground for ordering disgorgement was that the trust made several expenditures to Boscamp that violated the terms of the trust. Here again, we cannot find any error with the circuit court's finding. Under the terms of the trust, the trustees were to "retain" and "invest" trust assets so that Middleton could receive $30,000 per year for the rest of her life with the remainder going to charity upon her death. Boscamp admitted, however, that the trust never made annual payments of $30,000 to Middleton. Rather, Boscamp took the view that Middleton had "discretionary power" to use trust funds however she saw fit, including using trust funds to give Boscamp a $5000 gift and to buy Boscamp a $24,500 minivan. According to Boscamp, this discretionary authority also allowed Middleton to spend more than $30,000 per year on her personal expenses, such as she did in 2015 and 2016. Under questioning, Boscamp could not point to any provision that provided Middleton with this discretionary authority. And after reviewing the trust document, we conclude that no such provision exists. Accordingly, the circuit court did not err in finding that the trust made several unpermitted expenditures to Boscamp.

¶ 42 For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 43 Affirmed.