NOTICE

Decision filed 10/19/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 230421-U

NO. 5-23-0421

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| *In re* S.J., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, Petitioner-Appellee; | ) | St. Clair County. |
| Taisha B., Intervenor-Appellant). | ) | |
| | ) | No. 18-JA-87 |
| | ) | |
| | ) | Honorable |
| | ) | Elaine L. LeChien, |
| | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Presiding Justice Boie and Justice Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We dismiss the appeal where appellant fails to abide by the briefing rules in Illinois Supreme Court Rule 341.

¶ 2    Intervenor-appellant, Taisha B. (Aunt), challenges the judgment of the St. Clair County circuit court denying her petition for guardianship of her minor nephew, S.J. On appeal, Aunt, represented by counsel, argues that the court erred by (1) denying her petition for guardianship and (2) determining the best interest of the minor. Because of serious deficiencies in Aunt's briefing, we dismiss the appeal.

1

¶ 3                                    I. Background

¶ 4      On May 13, 2018, four-year-old S.J.'s biological mother, Iketta Williams (Mother), and biological father, Tyrone James (Father), brought S.J. to a hospital claiming worms were coming out of the family's noses, ears, eyes, and skin.[1] After hospital staff failed to find worms, they grew concerned that Mother and Father were under the influence of drugs or experiencing psychosis. Hospital staff conducted a drug screening of the parents. Father tested positive for cocaine and opiates. Mother tested positive for cocaine, opiates, and marijuana. Hospital staff made a hotline call, and the Illinois Department of Children and Family Services (DCFS) took immediate protective custody of S.J.

¶ 5      Two days later, the State filed a petition for temporary custody, pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (705 ILCS 405/2-3(1)(b) (West 2018)), alleging S.J. neglected because his parents exposed him to an environment injurious to his welfare. The court ordered S.J. to remain in the temporary custody of DCFS until an adjudicatory hearing on the State's petition.

¶ 6      On November 20, 2018, the circuit court held an adjudicatory hearing, finding the minor neglected due to an environment injurious to his health. The court also found Mother and Father unfit. The court granted temporary guardianship of S.J. to DCFS and set a permanency goal of return home within 12 months. On January 8, 2021, Aunt appeared through counsel and petitioned for guardianship of S.J.

¶ 7      On April 13, 2022, Mother and Father signed irrevocable consents for adoption of S.J., wherein they consented to Aunt adopting the minor. Aunt then filed a petition for leave to intervene on September 6, 2022, requesting guardianship of S.J., or for the circuit court to honor their consent

_____

[1]Mother and Father are not parties to the instant appeal.

for adoption. On September 21, 2022, the court entered an order granting Aunt's petition, in part, permitting Aunt to conduct limited discovery related to her petition for guardianship and the adoption consents.

¶ 8 On November 9, 2022, the circuit court found the adoption consents void under section 10 of the Adoption Act (750 ILCS 50/10 (West 2022)). The court found the consents void because DCFS never approved the execution of the adoption consents. *Id.* § 10(O)(1). In addition, Aunt never had physical custody of S.J. at any point in time, and she never took physical custody of any of his siblings. See *id.* § 10(O)(1)(a)-(c) (adoption consent must be made to a specified person who had physical custody of (a) the child for at least six months, (b) at least one of the child's siblings for at least six months, or (c) the child for at least three months if the child is under one year of age).

¶ 9 On April 12, 2023, the circuit court held a best interest hearing. At the hearing, the court considered Aunt's petition for guardianship of S.J. and the best interest of S.J. in the termination of parental rights. The State called Renita Thomas, S.J.'s DCFS child welfare specialist, who testified to the following. Thomas testified that it was in the minor's best interest to remain in his current foster home. Specifically, Thomas testified that S.J. was "thriving" and bonded with his foster parent and the other children in the home. Additionally, Mother and Father failed to complete DCFS family service plans, correct the conditions that caused S.J.'s removal, and maintain a relationship with the minor. Thomas also explained that S.J. had little to no relationship with Aunt. Thomas opined that it was in S.J.'s best interest to terminate parental rights, leave him in his current foster placement, and change the permanency goal to adoption.

¶ 10 Aunt testified next. Aunt testified that she lived in Texas and was willing and able to adopt S.J. On cross-examination, Aunt admitted that she last saw S.J. at a family reunion in 2017 or

3

2018. Aunt also admitted that she did not attempt to call S.J. after 2021 because the foster parent refused to answer.

¶ 11    Fazio Beverly, S.J.'s foster parent, testified last. Beverly testified that Mother and Father were inconsistent with visitation; however, S.J.'s behavioral issues worsened after their visits. Beverly originally planned to let her DCFS foster license expire; however, she cared so much for S.J. that she renewed it. She planned to adopt S.J. Beverly testified that S.J. did not know Aunt, appeared confused when Aunt called, and was scared to leave his foster home if Aunt were given custody.

¶ 12    Ultimately, the circuit court terminated the parental rights of Mother and Father, granted DCFS the power to consent to the minor's adoption, and denied Aunt's petition for guardianship. The court found that, despite her good intentions to care for S.J. as his only stable blood relative, Aunt had no consistent relationship with S.J. and he never lived with her. The court found it was in the minor's best interest to remain in his current foster placement and changed the permanency goal to adoption. Aunt filed a timely notice of appeal.

¶ 13                                    II. Analysis

¶ 14    On appeal, Aunt argues that the circuit court erred by denying her petition for guardianship and determining the best interest of the minor. For the following reasons, we dismiss the appeal because of deficiencies in Aunt's brief.

¶ 15    Illinois Supreme Court Rule 341(h) (eff. Oct. 1, 2020) governs the content of an appellant's brief. Adherence to Rule 341 is not an inconsequential matter, because a compliant brief will present clear and orderly arguments so that the court may properly ascertain and dispose of the issues involved. *Young v. City of Centreville*, 169 Ill. App. 3d 166, 168 (1988). Rule 341(h)(6) states that an appellant's brief "shall contain the facts necessary to an understanding of the case,

4

*** with appropriate reference to the pages of the record on appeal ***." Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020). Rule 341(h)(7) states that the argument of an appellant's brief "shall contain the contentions of the appellant and the reasons therefor, *with citation of the authorities and the pages of the record relied on*." (Emphasis added.) Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Mere contentions, without argument or citation of authority, do not merit consideration on appeal and may be dismissed. *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 401 Ill. App. 3d 868, 881 (2010). The dismissal of an appeal based upon Rule 341 is a harsh sanction and is only appropriate when the violations of briefing rules interfere with or preclude review. *In re Detention of Powell*, 217 Ill. 2d 123, 132 (2005).

¶ 16     Here, the deficiencies in Aunt's brief warrant the harsh sanction of dismissal. First, this court notes that Aunt's brief is devoid of paragraphs stating the nature of the case, the issue presented for review, and the grounds for appellate jurisdiction. Ill. S. Ct. R. 341(h)(2)-(4) (eff. Oct. 1, 2020). Second, in both the facts and argument sections, Aunt fails to cite any portion of the record. Ill. S. Ct. R. 341(h)(6), (7) (eff. Oct. 1, 2020). The facts section is one, sparse paragraph and fails to include the facts necessary for an understanding of the issues on appeal. Similarly, the three-paragraph argument section lacks sufficient citation to relevant authority and consists mostly of "mere contentions" that lack argument. *Palm*, 401 Ill. App. 3d at 881 (" 'The well-established rule is that mere contentions, without argument or citation of authority, do not merit consideration on appeal.' " (quoting *People v. Hood*, 210 Ill. App. 3d 743, 746 (1991))). Specifically, Aunt contends that "Respondent[2] has deficiencies in caring for the minor's health and stability" and that Aunt is "better able to care for the health, safety and stability of the minor child." These contentions are not paired with additional analysis, citations of the record, or citations of authority.

---

[2]It is unclear whether Aunt intends "Respondent" to refer to DCFS or S.J.'s foster parent—neither of which are a respondent in this matter.

¶ 17 Courts often overlook deficiencies in a party's brief and reach the merits if the deficiencies do not hinder the court's ability to review the issues. *Enbridge Pipeline (Illinois), L.L.C. v. Murfin*, 2020 IL App (5th) 160007, ¶ 75. Here, however, to reach the merits of this case would require this court bear the burden of searching the record, drawing inferences, and making arguments on behalf of Aunt. This court is " 'not simply a depository into which a party may dump the burden of argument and research.' " *Lake County Grading Co. v. Village of Antioch*, 2014 IL 115805, ¶ 36 (quoting *People ex rel. Illinois Department of Labor v. E.R.H. Enterprises, Inc.*, 2013 IL 115106, ¶ 56). Rule 341 is designed to prevent such situation. *Id.* Accordingly, we find it necessary to dismiss the appeal.

¶ 18                                      III. Conclusion

¶ 19 For these reasons, we dismiss Aunt's appeal pursuant to Illinois Supreme Court Rule 341.


¶ 20 Appeal dismissed.